ACCEPTED
03-14-00397-CV
3783258
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/15/2015 2:06:00 PM
JEFFREY D. KYLE
CLERK

**No. 03-14-00397-CV**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/15/2015 2:06:00 PM
JEFFREY D. KYLE
Clerk

In the Court of Appeals
For the Third Judicial District
Austin, Texas

## AMERICAN MULTI-CINEMA, INC.

*Appellant & Cross-Appellee,*

**v.**

## GLENN HEGAR, COMPTROLLER OF PUBLIC ACCOUNTS OF THE STATE OF TEXAS, AND KEN PAXTON, ATTORNEY GENERAL OF THE STATE OF TEXAS

*Appellees & Cross-Appellants.*

ON APPEAL FROM THE 200TH DISTRICT COURT, TRAVIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. D-1-GN-12-003831

## APPELLANT'S REPLY BRIEF

Mark W. Eidman
Texas Bar No. 06496500
Mark.Eidman@RyanLawLLP.com

Doug Sigel
Texas Bar No. 18347650
Doug.Sigel@RyanLawLLP.com

Olga Goldberg
Texas Bar No. 24083081
Olga.Goldberg@RyanLawLLP.com

January 15, 2015

RYAN LAW FIRM, LLP
100 Congress Avenue, Suite 950
Austin, Texas 78701
512.459.6600 Telephone
512.459.6601 Facsimile

***Counsel for Appellant***

# Table of Contents

Table of Contents ..................................................................................... ii

Table of Authorities................................................................................ iv

Appendix ................................................................................................. v

Reply to Appellees' Statement of the Case ...................................................1

Reply to Appellees' Issue Presented...............................................................1

Argument ................................................................................................ 2

   I.    The phase two trial court disregarded conclusive evidence that establishes AMC's sight and sound production process................... 2

   II.   This Court should not ignore the plain language of the Tax Code and the evidence presented at trial in favor of the Comptroller's "common knowledge" argument. .............................. 7

       A.   AMC's sight and sound production process is not "common knowledge." The Comptroller's common knowledge argument is not evidence. .......................................8

       B.   There is no support in the Tax Code for the Comptroller's attempt to bifurcate AMC's production space and consumption space. .................................................................. 11

       C.   Because Tax Code § 171.1012(a)(2) expressly defines "production" to include "improvement," AMC's improvements to the film's sight and sound are part of the film production process.........................................................13

   III.   The Comptroller's arguments regarding stipulated issues—the costs at issue and the Comptroller's calculations—are wholly irrelevant to AMC's appeal. ..........................................................15

       A.   Comptroller's argument regarding the costs at issue ignores the parties' stipulation and contradicts Texas law........16

       B.   The Comptroller's argument regarding its calculations ignores the stipulation and is no substitute for conclusive trial evidence. ...................................................................19

**Appellant's Reply Brief – Page ii**

Conclusion and Prayer .............................................................. 19

Certificate of Compliance .......................................................... 21

Certificate of Service................................................................ 21

# Table of Authorities

**CASES**

*American Tobacco Co. v. Grinnel*,
  951 S.W.2d 420 (Tex. 1997) ................................................................... 8, 9

*Bell Helicopter Textron, Inc. v. Combs*,
  No. 03-10-00764-CV, 2011 WL 6938491 (Tex. App.—Austin Dec. 29,
  2011, no pet.) ................................................................................................. 3

*Bioderm Skin Care, LLC v. Sok*,
  426 S.W.3d 753 (Tex. 2014) ...................................................................... 9

*Bonebrake v. Dep't of Revenue*,
  15 Or. Tax 244 (2000) ................................................................................ 8

*Buckeye Retirement Co. v. Bank of America, N.A.*,
  239 S.W.3d 394 (Tex. App.—Dallas 2007) ............................................ 18

*Combs v. Roark Amusement & Vending, L.P.*,
  422 S.W.3d 632 (Tex. 2013) .................................................................... 12

*First Am. Title Ins. Co. v. Combs*,
  258 S.W.3d 627 (Tex. 2008) ...................................................................... 3

*H.K. Global Trading, Ltd. v. Combs*,
  429 S.W.3d 132 (Tex. App.—Austin, pet. denied) ........................... 15, 18

*Haddock v. Arnspiger*,
  793 S.W.2d 948 (Tex. 1990) ...................................................................... 9

*People v. McCabe*,
  266 N.Y.S. 363 (N.Y. Sup. Ct. 1933) ....................................................... 8

*Tijerina v. Boletto*,
  207 S.W.2d 136 (Tex. Civ. App.—Austin 1947, no writ) ....................... 18

*TracFone Wireless, Inc. v. Comm'n on State Emergency Commn'cs*,
  397 S.W.3d 173 (Tex. 2013) ................................................................. 2, 12

**STATUTES**

Tex. Tax Code § 171.1012 (West 2008) ............................................... passim

**RULES**

Tex. R. Evid. 201.................................................................................9

**OTHER AUTHORITIES**

BLACK'S LAW DICTIONARY (10th ed. 2014) ........................................................8

NEW OXFORD AMERICAN DICTIONARY (3rd ed. 2010)................................... 12

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002)........................ 13

# Appendix

7.    Supplemental Stipulation of Facts (Phase Two)

## Reply to Appellees' Statement of the Case

AMC refers the Court to the Statement of the Case in its Appellants' Brief. AMC's disagreement with the Comptroller's description of the trial court's disposition of the case—which appears in both the Appellees' Brief and the Cross-Appellants' Brief—is outlined in AMC's Response to Cross-Appellants' Statement of the Case in AMC's Cross-Appellee's Brief.

## Reply to Appellees' Issue Presented

AMC disagrees with the Comptroller's Issue Presented regarding phase two of the trial because the Comptroller improperly attempts to narrow the issue in AMC's appeal by asking the Court to determine that AMC's product is produced "in" specific equipment. (*See* Appellees' Brief at v.). The Tax Code, and not the Comptroller's assertions, dictate the scope and nature of the issue presented.

The Tax Code specifically and broadly defines the term "production" for purposes of the cost of goods sold ("COGS") subtraction in Tax Code § 171.1012.[1] Under section 171.1012, AMC is permitted to include certain direct costs of producing the goods it sells to its customers. Because the parties agree as to the majority of the production costs, the disputed issue--

---

[1] "CR" refers to the clerk's record. "P1, ___ RR" refers to the reporter's record from phase one. "P1, ___ RR" and "P2, ___ RR" refer to the reporter's records from phase one and phase two, respectively. "Tab" refers to this brief's appendix. Unless noted otherwise, "Tax Code" and "section" refer to their respective provisions of the Texas Tax Code in effect during the period in issue (Report Years 2008 and 2009).

**Appellant's Reply Brief – Page 1**

which is the subject of AMC's appeal of phase two--is the percentage of movie theatre auditorium space used in the production of AMC's film product.

## Argument

I. **The phase two trial court disregarded conclusive evidence that establishes AMC's sight and sound production process.**

The phase two trial court's erroneous conclusion of law no. 3 outlines the phase two court's **sole basis** for its ruling:

> Interpretations given to statutes by state agencies are entitled to deference when, as here, a tax [un]arguably applies and the court is weighing competing interpretations of the amount owed. The Comptroller's interpretation of the amount owed in the present case is reasonable under the plain language of Section 171.1012, Tax Code.

(Supp. CR 29.) In a letter to the parties, Judge Naranjo—who presided over the trial of phase two—made explicit that she ruled for the Comptroller based *only* on what she believed to be the Comptroller's interpretation in a dispute involving the calculation of tax.[2]

---

[2] In the letter enclosing its final judgment, the phase two trial court "thought it would be helpful to the parties to explain the basis of its ruling." (Supp. CR 33.) "In reaching its decision the Court relied on *TracFone Wireless* . . . which states that the interpretations given to statutes by state agencies are entitled to deference when, as here, 'a tax unarguably applies and the court is weighing competing interpretations of the amount owed.'" (*Id.*) *See TracFone Wireless, Inc. v. Comm'n on State Emergency Commn'cs*, 397 S.W.3d 173, 183 (Tex. 2013). The trial court's asserted support for its ruling is reflected in erroneous conclusion of law no. 3. (Supp. CR 29.)

The phase two ruling got it completely wrong.  As outlined in the Appellant's Brief, there was *no dispute* over the calculation of tax in the trial of phase two.[3]  (Appellant's Brief at 25-26.)  The parties stipulated to each side's competing calculation of AMC's tax refund in order to streamline the trial of phase two.  (CR 228-33.)  Judge Naranjo should have adopted one party's stipulated refund amount calculation *only if* that party prevailed on the substantive question of law raised by the Tax Code definition, as applied to AMC's facts.  In other words, Judge Naranjo was required to determine, under the definition of "production" in Tax Code § 171.1012(b), *where* exactly does AMC's production process occur?

The Comptroller's brief strangely rejects the phase two trial court's only justification for her ruling.  The Comptroller agrees with AMC that this Court "need not afford any deference to the agency or the agency's counsel" because the Comptroller's litigation position in this case is categorically not formal agency policy.  (Appellees' Brief at 10 n.3.)  The Comptroller urges— and AMC agrees—that "[t]he judgment should be upheld if there exists

---

[3] This Court has ruled on cases actually involving calculation disputes, which did not implicate underlying substantive questions of law.  *See Bell Helicopter Textron, Inc. v. Combs*, No. 03-10-00764-CV, 2011 WL 6938491, *3-5 (Tex. App.—Austin Dec. 29, 2011, no pet.) (in a taxpayer challenge to the Comptroller's methodology for calculating the interest on its tax refund, this Court deferred to the Comptroller's calculations); *see also First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627 (Tex. 2008) (deferring to Comptroller's formally-promulgated rule requiring new method of calculating retaliatory tax).  Conversely, AMC's appeal does not challenge the Comptroller's method of calculating AMC's refund; AMC vigorously challenges the Comptroller's litigation position interpreting the Tax Code definition of "production" as applied to AMC.

factually sufficient evidence supporting the trial court's affirmative findings. In other words, [AMC's] appeal presents a straightforward application of [section] 171.1012 to the record before this [C]ourt." (*Id.*) In reality, there is *no evidence*, much less factually sufficient evidence, in the record supporting the Comptroller's position. The *only* evidence regarding AMC's film production process—Huerta's testimony—directly contradicts the Comptroller's unsupported assertions and conclusively establishes AMC's position. There is thus no basis in the record on which to affirm the phase two court's judgment.

In phase one of trial, Judge Byrne ruled that AMC is entitled to include its costs to exhibit films in its COGS subtraction when calculating its franchise tax. (CR 97; Supp. CR 27.) The court found, based on the evidence and testimony, that AMC's product—the film sight and sound experience—is "tangible personal property" as defined in Tax Code § 171.1012(a)(3)(A)(i). (Supp. CR 30.) AMC's customers purchase a product that can be seen, heard, and is perceptible to the senses.[4] The evidence alternatively proved that AMC's product is a film, which is "tangible personal property" under section 171.1012(a)(3)(A)(ii). (Appellant's Brief at 4-6, 13-22.) This is an independent basis supporting

---

[4] *See* Tex. Tax Code § 171.1012(a)(3)(A)(i).

**Appellant's Reply Brief – Page 4**

Judge Byrne's ruling and is extensively briefed in the Cross-Appellee's Brief. (*See* Cross-Appellee's Brief at 13-22.)

A taxpayer that sells tangible personal property in the ordinary course of business is entitled to subtract its direct production costs as COGS.[5] Tax Code § 171.1012(a)(2) specifically and unambiguously defines "production" as including

> **construction**, **installation**, **manufacture**, **development**, mining, extraction, **improvement**, **creation**, raising, or growth.

(Emphasis added.) The costs at issue in AMC's appeal are those related to the facilities AMC used to produce its product. Only costs related to facilities used directly in production may be subtracted under section 171.1012. The central question in phase two of trial was thus, ***where* does AMC produce its film product**?

The answer to this specific question determines the portion of allowed costs specifically listed in the statute, such as facilities rent, real estate taxes, building depreciation, utilities, and insurance.[6] Therefore, the parties stipulated to the percentages of AMC's costs applicable to each party's competing theory of the case based upon square footage. This

---

[5] *See* Tex. Tax Code § 171.1012(a)(1), (c), (d), & (o).
[6] Tax Code §§ 171.1012(c)(7), (d)(6), (d)(8) and (o).

appeal involves the disputed issue of the amount of the square footage of the movie theatre auditorium used to produce AMC's film product.

Huerta's testimony, based on decades of expertise, conclusively established that the **entire** movie theatre auditorium is used to produce AMC's product. (P2, 1 RR 37-38.) The Comptroller argued—without support—that only the square footage occupied by the projector, screen and speakers is used to produce the product. The Comptroller presented no evidence or testimony. (P2, 1 RR 22.)

What are the true facts regarding the production process as proven by the actual evidence, Huerta's testimony? The auditorium itself is a production stage that is vital to the production of AMC's film product— premium motion picture sight and sound experience. (P2, 1 RR 37-69.[7]) The lighting and sound in this specific experience must be specifically and meticulously calibrated to each unique auditorium space to *manufacture* the quality product that AMC's customers demand. (P2, 1 RR 52-53.) The auditorium functions as an acoustic chamber and sound equalization and screen brightness are frequently adjusted as part of a process that is carefully designed to *improve* upon the films AMC receives from its studio partners. (P2, 1 RR 41, 51-53, 67-68.) If any of the precise visual and

[7] At trial of phase two, Huerta emphatically referred to AMC's "premium" product, underscoring the importance of quality to the sight and sound experience sold to AMC's customers. (P2, 1 RR 42.)

acoustic elements in the auditorium is off balance, the result can be disastrous and AMC will be unable to produce the superior sight and sound product its customers demand. (P2, 1 RR 51-52, 67-68.)

Huerta's testimony conclusively proved that without the state of the art auditorium production environment, AMC could not produce the sight and sound experience it sells to its customers. The Comptroller offered no evidence on this point. There is therefore nothing in the record that contradicts Huerta's testimony that production occurs in the entire auditorium. The Comptroller's appeals to "common knowledge" facts are not evidence and wholly disregard both conclusive evidence and the Tax Code's definition discussed above. There is no basis for the phase two trial court's judgment, and AMC asks the Court to reverse the phase two ruling.

## II. This Court should not ignore the plain language of the Tax Code and the evidence presented at trial in favor of the Comptroller's "common knowledge" argument.

AMC vigorously disagrees with the Comptroller's simplistic "common knowledge" argument. Common knowledge is not a reason to affirm a trial judge who disregarded the evidence. The Comptroller's simplistic and unsupported explanations that mischaracterize AMC's highly technical production process are not evidence and in fact plainly disregard both conclusive evidence in this case and the unambiguous language of the

"production" definition in Tax Code § 171.1012(a)(2).

> **A.     AMC's sight and sound production process is not "common knowledge."  The Comptroller's common knowledge argument is not evidence.**

The Comptroller asks this Court to disregard conclusive evidence in favor of the Comptroller's unsupported factual assertions about "common knowledge."  But common knowledge is not evidence.  *See Bonebrake v. Dep't of Revenue*, 15 Or. Tax 244, 245 (2000) (ruling Taxpayer's claim that building costs are "common knowledge" was not evidence); *People v. McCabe*, 266 N.Y.S. 363, 367 (N.Y. Sup. Ct. 1933) (holding that prosecutor's "common knowledge" basis for the accusations against a defendant was not evidence).  And the Comptroller's disregard for the trial record, which conclusively establishes the facts regarding AMC's production process, cannot support affirming the phase two trial court's erroneous judgment.

Black's Law Dictionary defines "common knowledge" as "[a] fact that is so widely known that a court may accept it as true without proof."  BLACK'S LAW DICTIONARY 334 (10th ed. 2014); *see also American Tobacco Co. v. Grinnel*, 951 S.W.2d 420, 427 (Tex. 1997) ("common knowledge encompasses only those things so patently obvious and so well known to the community generally, that there can be no question or dispute

concerning their existence") (internal quotations omitted).[8]  For matters outside the layperson's common knowledge, courts require evidence.[9]  The average layperson has no common knowledge of AMC's sight and sound production, as established by Huerta's testimony during trial.

The Comptroller's counsel and most lay people have the knowledge of a *moviegoer*, a purchaser of a movie theatre's sight and sound experience. (*See* Appellees' Brief at 12.)  Most people know that a movie theatre has seats, that a film is projected onto a screen, and that there are speakers that play a soundtrack.

But a person's superficial experience of a film's sight and sound imparts absolutely no knowledge of the technical, complex method by which the sight and sound experience is *produced*.  AMC's film production

---

[8] The Comptroller's so called "common knowledge" facts are not properly in the trial record.  The Comptroller did not ask the phase two trial court to take judicial notice of any common knowledge facts, nor did the court do so on its own.  Under Tex. R. Evid. 201(b), a court may take judicial notice of an adjudicative fact *only if* the fact is "one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  AMC's technical film production process is not generally known, and the Comptroller presented no evidence to support the supposed common knowledge facts.

[9] *See Bioderm Skin Care, LLC v. Sok*, 426 S.W.3d 753, 761 (Tex. 2014) (expert testimony required regarding use of a medical instrument in a medical procedural because such use "is not a matter plainly within the common knowledge of laymen"); *American Tobacco*, 951 S.W.2d at 430 ("we cannot simply assume that common knowledge of the general health risks of tobacco use naturally includes common knowledge of tobacco's addictive quality");  *Haddock v. Arnspiger*, 793 S.W.2d 948, 951 (Tex. 1990) (doctrine of *res ipsa loquitur* ("the thing speaks for itself") does not apply "when the use of the mechanical instrument is not a matter within the common knowledge of laymen").

process is highly specialized and continually evolves with technology.[10] AMC's technology, for example, is always improving, from the implementation of digital and multidimensional audio, to digital projection, to improvements to screen, amplifier, and projector technology. (P2, 1 RR 38.)  A lay moviegoer has no knowledge of these technologies or the "dozens and dozens of different technical elements" required to produce AMC's sight and sound product.  (P2, 1 RR 49-50.)

The phase one trial court correctly ruled that AMC's sight and sound product is tangible personal property that can be seen and is perceptible to the senses.  But a moviegoer who perceives AMC's film experience nevertheless has no insight into *how* AMC produces that product.  (*Cf.* Appellees' Brief at 12 ("The audience perceives the movie coming from the screens and the speakers, not the seats, floors, armrests, or the aisles.  To be sure, the auditorium can affect the quality of the sight and sound. . . . But that doesn't have anything to do with where the 'good' is 'produced.'").)

The Comptroller's belief that a person who has experienced a film in a theatre understands how that film is produced is akin to a belief that a person who has eaten a gourmet meal knows exactly how that meal was prepared.  Or, similarly, a belief that a person who has pumped gasoline at

---

[10] For example, Huerta has a degree in electrical engineering technology and has served in technical roles dedicated to fixture of facilities, technical systems, digital systems, new technology, and sight and sounds.  (P2, 1 RR 37-38).

a gas station understands the highly technical oil and gasoline production process. Merely experiencing a product does not give the average lay consumer insight into the product's production process or make the process common knowledge.

The production process established by Huerta's testimony is not within the layperson's common knowledge. The Comptroller's vastly oversimplified opinion of the film sight and sound production process is not evidence, is not properly in the record, and provides no support for the phase two trial court's judgment. AMC asks this Court to reverse the trial court's phase two ruling.

**B. There is no support in the Tax Code for the Comptroller's attempt to bifurcate AMC's production space and consumption space.**

The Comptroller asks this Court to create a false dichotomy wholly unsupported by the Tax Code: assuming that AMC's product is produced in one space, AMC's customers must then consume that product in a different space. (Appellees' Brief at 2.)

To that end, the Comptroller analogizes to a restaurant, in which food production and food consumption areas are, in fact, located in two separate areas. (*Id.* at 13.) But the restaurant analogy tells the Court nothing about how *AMC's* product is produced. As Huerta explained at trial, a restaurant

customer sitting in a dining room simply orders and consumes the food that was produced or prepared in the kitchen. (P2, 1 RR 54-55). Conversely, in a movie theatre auditorium, AMC is "certainly creating [the product] not just from an ambiance perspective, but . . . from an acoustical integrity, design and technical perspective," often at the same time that AMC's customers consume[11] the product in the same auditorium. (*Id.*)

There is nothing in Tax Code § 171.1012 that requires a space to be used solely for production or consumption of goods for purposes of COGS. Huerta's testimony established that AMC's movie theatre auditoriums are used for both production and consumption. Texas courts have rejected the Comptroller's repeated attempts to impose extra-statutory requirements on unambiguous statutory provisions. *See Combs v. Roark Amusement & Vending, L.P.,* 422 S.W.3d 632, 637 (Tex. 2013) ; *TracFone Wireless*, 397 S.W.3d at 183. AMC asks the Court to reject the Comptroller's attempts to expand his taxing authority by improperly narrowing statutorily-granted exclusions from tax.

---

[11] The plain meaning of "consumption" includes "the reception of information or entertainment, esp. by a mass audience." NEW OXFORD AMERICAN DICTIONARY 373 (3rd ed. 2010).

**C.** **Because Tax Code § 171.1012(a)(2) expressly defines "production" to include "improvement," AMC's improvements to the film's sight and sound are part of the film production process.**

The Comptroller asks this Court to ignore that Tax Code § 171.1012(a)(2) explicitly defines "production" to include "improvement." Appellees' Brief claims incongruously that the "quality of the auditorium," as well as the "quality of the sight and sound" are irrelevant to the Court's determination of AMC's production space. (Appellees' Brief at 12.) The plain language of the Tax Code mandates the opposite conclusion.

The ordinary meaning of "improve," is "to enhance in value or *quality*."[12] Thus, production occurs wherever improvement occurs. As Huerta testified, AMC substantially improves, or enhances the quality of, the film product in the movie theatre auditorium:

> Certainly, we improved on what we're originally provided by our studio partners because if we did not, if you were to go to one of our theatres and that auditorium did not have an auditorium specific sound EQ or equalization, the dialogue would not be as intelligible, the surround coverage and the associate of what we call SPLs or sound pressure level, some of them would be too loud; some of them would be too high or hot as we call it. You might not have enough low frequency. . . . Now, on the visual side, we do it specific to the screen type. . . . Everything has to be combined and that combination is what really creates the unique auditorium specific entertainment experience.

---

[12] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1138 (2002) (emphasis added).

(P2, 1 RR 47-48.) AMC sells the resulting superior motion picture sight and sound experience to its customers. Without the improvements performed in the movie theatre auditorium, sound would be muddled, sight would be distorted, and theatre fixtures could rattle. (P2, 1 RR 51-52, 68.) AMC would have no product without improving the quality of the raw material—the film reel rented from the movie studio—as part of its production process.

For the same reason, the Comptroller's analogies to a movie viewed at home, on a smart phone, or at a drive-in theatre are unhelpful to the Court and were rejected by Huerta. (*See* Appellees' Brief at 13.) These analogies tell the Court nothing about *AMC's* specific cutting-edge sight and sound production in a movie theatre. In each scenario, the movie viewer does not experience the improved film product AMC produces in its movie theatre auditoriums. Huerta explained that these spaces lack the AMC auditorium "controlled environment with multi dimensional surround audio" or the "controlled acoustical environment . . . where you have audio that is equalized specifically for that space, which basically results in the best quality of sight and sound." (P2, 1 RR 39-40, 54.) The production, or improvement, that occurs in each AMC auditorium, is missing from the Comptroller's clumsy analogies.

### III. The Comptroller's arguments regarding stipulated issues—the costs at issue and the Comptroller's calculations—are wholly irrelevant to AMC's appeal.

The Appellees' Brief wrongly brings two un-appealed and undisputed issues before the court: (1) whether AMC can include the costs listed in Tax Code § 171.1012(o) in its COGS subtraction; and (2) whether the Comptroller's calculation in phase two of the trial—specifically, his estimate that AMC is entitled to include 1.56% of movie theatre auditorium space in COGS—is in dispute. (Appellees' Brief at 5-6, 9.)

The parties entered into a pretrial stipulation (Tab 7). The parties agreed to both the *types* of costs allowed and to both parties' refund calculations, with the sole dispute remaining as to which side's argument on the allowable costs is correct. (CR 228-33.) The stipulation was accepted by the phase two trial court. (Supp. CR 28-29.) The Comptroller's arguments on matters not in dispute are wholly inapposite to AMC's appeal and should be disregarded by the Court.[13]

---

[13] The Comptroller's phase two Appellees' Brief seeks to confuse the issues on appeal by infusing the Comptroller's waiver argument from his phase one Cross-Appellants' Brief. As outlined in AMC's Cross-Appellee's Brief, as the prevailing party in phase one, AMC was not required to appeal the trial court's favorable judgment. (Cross-Appellee's Brief at 15-17.) Further, the phase one trial court was not required to "set out in detail every reason or theory" that led it to rule in AMC's favor. *H.K. Global Trading, Ltd. v. Combs*, 429 S.W.3d 132, 141 (Tex. App.—Austin, pet. denied) (internal quotations omitted). The Comptroller's waiver argument is irrelevant to AMC's appeal of phase two and unavailing in the Comptroller's appeal of phase one.

Notably, AMC's desire to streamline the trial by stipulating to the Comptroller's refund calculation to be used, if the trial court accepted the Comptroller's theory *did not* relieve the Comptroller from putting on evidence to support his assertion that AMC's film production space was limited to the movie theatre screens, speakers, and projection room. The parties' stipulation does not excuse Comptroller's failure to put on *any* evidence on the disputed issue that AMC produces its film sight and sound experience. Nor is the stipulation a legitimate reason for this Court to rule in favor of the Comptroller's position based on assertions about common knowledge. This Court should decide based on the on-point testimony of Huerta, which was the only evidence of AMC's highly complex, technical production process.

### A. Comptroller's argument regarding the costs at issue ignores the parties' stipulation and contradicts Texas law.

AMC is permitted to subtract the costs listed in the stipulation by Tax Code § 171.1012(c), (d), and (o). The Comptroller agreed that AMC was entitled to subtract as COGS 100% of some of these costs—such as film rent. (*Id.*) The Comptroller agreed that AMC was entitled to subtract a percentage of other costs, which related to AMC movie theatre facilities. (*Id.*) The only disagreement was the correct percentage of facility-related

costs to be determined based on where the production of the movie occurs.[14]  There was no dispute at trial—and there is none in AMC's appeal—as to the *types* of costs AMC may subtract as COGS.

In the Appellees' Brief, the Comptroller now bizarrely argues that AMC may not subtract the costs described in Tax Code § 171.1012(o).  But it is wholly unclear which stipulated categories of costs—if any[15]—the Comptroller would seek to remove from COGS.  (Appellees' Brief at 5-6.)

Section 171.1012(o) permits a taxpayer whose "principal business activity" is film or television production or broadcasting or the distribution of tangible personal property including films to subtract the costs permitted in section 171.1012 generally as COGS.  The Comptroller claims that AMC cannot subtract the costs in subsection (o) because the phase one trial court made no specific finding of fact on AMC's "principal business activity."  (*Id.* at 6.)[16]

The phase one trial court was not required to make a finding of fact on AMC's "principal business activity" because that fact would have no

---

[14] The costs at issue are listed in bold in Joint Exhibit 1.  (CR 233.)

[15] Appellees' Brief also notes that "[t]he parties agree on most of the numbers" listed in Joint Exhibit 1.  (Appellees' Brief at 11.)  In fact, the Comptroller's position in phase two, and the trial court's ruling, rest wholly on the parties' stipulation.  (*See* CR 228-33; Supp. CR 28-29.)

[16] The Comptroller improperly makes his argument in the Appellees' Brief Statement of Facts section labeled "Texas Law."  Including argument in the Statement of Facts is misleading to this Court and inappropriate under Tex. R. App. P. 38.1(g) & 38.2, which prohibit argument in the Statement of Facts.

effect on the court's ruling.  A trial court is required to make only the findings of fact that are dispositive of the ultimate, or controlling, issues. *Tijerina v. Boletto*, 207 S.W.2d 136, 137 (Tex. Civ. App.—Austin 1947, no writ) ("It is not proper or necessary for the trial court to make specific findings on every controverted fact"); *Buckeye Retirement Co. v. Bank of America, N.A.*, 239 S.W.3d 394, 402 (Tex. App.—Dallas 2007) (an ultimate or controlling fact issue "is one that is essential to the cause of action" and "that would have a direct effect on the judgment").  A court is "not required to set out in detail every reason or theory by which it arrived at its final conclusions." *H.K. Global Trading, Ltd. v. Combs*, 429 S.W.3d 132, 141 (Tex. App.—Austin 2014, pet. denied) (internal quotations omitted).

The issue in phase one of trial was whether AMC was entitled to elect to subtract its costs to exhibit films as COGS.  (CR 6.)  A taxpayer can elect the COGS subtraction only if it sells "goods," defined to include "tangible personal property sold in the ordinary course of business."[17]  The phase one trial court made all necessary findings—including the fact that AMC sells tangible personal property as defined by section 171.1012(a)(3)(A)(i)— to support its conclusion that AMC is entitled to subtract its costs to exhibit

---

[17] Tex. Tax Code § 171.1012(a)(1).

films to its customers.  (Supp. CR 30.)  There was absolutely no need for AMC to appeal the phase one court's correct ruling.

**B.    The Comptroller's argument regarding its calculations ignores the stipulation and is no substitute for conclusive trial evidence.**

A footnote in the Appellant's Brief notes that the Comptroller's calculations on AMC's refund claim, like the entirety of the Comptroller's litigation position on phase two of trial, is wholly unsupported by any evidence in the record.  (Appellant's Brief at 5 n.6.)  AMC disagrees with the Comptroller's claim that AMC had any burden to prove the Comptroller's litigation position.  (*See* Appellees' Brief at 9.)  The Comptroller, not AMC, argued that production occurs only at the screens and speakers of the movie theatre auditorium.  AMC's trial evidence—the only evidence in the record—conclusively proved that the **entire auditorium** is used in the production of AMC's film product.  Again, the Comptroller's arguments regarding stipulated numbers is bizarre and irrelevant to AMC's appeal.

## Conclusion and Prayer

For the reasons set forth above, AMC respectfully asks this Court to reverse the district court's judgment, and to render judgment that,

1.  The entire movie theatre auditorium is used in the production of the goods AMC sells to its customers;

2. As stipulated, costs associated with the square footage of the auditorium, projection room, and 75% of concession space can be included in AMC's COGS subtraction (or 67.67% of the total average movie theatre square footage); and

3. AMC is entitled to an additional tax refund amount of $349,947.00 for a total of $579,656 for Report Year 2008 and an additional $321.334.00 for a total of $591,293 for Report Years 2009, in addition to assessed penalty and interest and statutory interest.

Respectfully submitted,

_Doug Sigel_

Mark W. Eidman
Texas Bar No. 06496500
Mark.Eidman@RyanLawLLP.com
Doug Sigel
Texas Bar No. 18347650
Doug.Sigel@RyanLawLLP.com
Olga Goldberg
Texas Bar No. 24083081
Olga.Goldberg@RyanLawLLP.com
RYAN LAW FIRM, LLP
100 Congress Avenue, Suite 950
Austin, Texas  78701
Telephone: (512) 459-6600
Facsimile: (512) 459-6601

Attorneys for Appellant

## Certificate of Compliance

This computer-generated document created in Microsoft Word complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains 4667 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1). In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

_____
Doug Sigel

## Certificate of Service

I certify that a copy of the foregoing Appellant's Reply Brief was served on Appellees, Glenn Hegar and Ken Paxton, through counsel of record, Charles Eldred, Office of the Attorney General, Financial Litigation, Tax, and Charitable Trusts Division, 300 West 15th Street, 6th Floor, Austin, Texas, 78701, charles.eldred@texasattorneygeneral.gov, by electronic service through efile.txcourts.gov on January 15, 2015.

_____
Doug Sigel

# Tab 7
# Supplemental Stipulation of Facts (Phase Two)

Cause No. D-1-GN-12-003831

| | | |
|---|---|---|
| AMERICAN MULTI-CINEMA, INC., | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| SUSAN COMBS, COMPTROLLER OF | § | TRAVIS COUNTY, TEXAS |
| PUBLIC ACCOUNTS OF THE STATE | § | |
| OF TEXAS, and GREG ABBOTT, | § | |
| ATTORNEY GENERAL OF THE STATE | § | |
| OF TEXAS, | § | |
| Defendants. | § | 200TH JUDICIAL DISTRICT |

## SUPPLEMENTAL STIPULATION OF FACTS (PHASE TWO)

The parties stipulate regarding the refund amount, but reserve the right to offer other evidence not inconsistent with these stipulated facts.

1.     Judge Byrne ruled In Phase One that American Multi-Cinema, Inc. ("AMC") may include exhibition costs as Cost of Goods Sold ("COGS") for Report Years 2008 and 2009. Defendants do not agree with this ruling and reserve their appeal rights, but enter into this stipulation to streamline the determination of the refund amount based on the ruling.

2.     The parties stipulate to the admissibility of Joint Exhibit 1. Defendants agree that the majority of the costs claimed by AMC as COGS qualify as exhibition costs. These agreed costs include the costs reflected on Joint Exhibit 1 (attached), with the exception of the percentage of certain rent, real estate taxes, utilities, depreciation, and insurance expenses ("the disputed costs") to be included. The disagreed costs are listed on Joint Exhibit 1 in bold. Plaintiffs contend that 67.67% of the disputed costs should be included. Defendants disagree with this percentage and contend that only 13.42% of the disputed costs should be included.

Phase Two Stipulation of Facts                                                                                     Page 1
D-1-GN-12-003831; *American Multi-Cinema, Inc. v. Combs*

3.    Defendants also contend that newspaper advertising costs should not be included. AMC has excluded such costs from Joint Exhibit 1.

4.    If the Court agrees with AMC's position that 67.67% of the disputed costs qualify, the tax refund amounts due Plaintiff are $579,656 for Report Year 2008 and $591,293 for Report Year 2009. If the Court agrees with Defendants' position that 13.42% of the disputed costs qualify, the tax refund amount due Plaintiff are $229,709 for Report Year 2008 and $269,959 for Report Year 2009. Plaintiff is also due assessed penalty, assessed interest, and statutory interest.

**AGREED AS TO FORM AND SUBSTANCE:**

RYAN LAW FIRM, LLP
100 Congress Avenue, Suite 950
Austin, Texas 78701
512.459.6600 – Telephone
512.459.6601 – Facsimile

By: _____
Doug Sigel
State Bar No. 18347650
doug.sigel@ryanlawllp.com
Olga Goldberg
State Bar No. 24083081
olga.goldberg@ryanlawllp.com

_____
Mr. Charles K. Eldred
Assistant Attorney General
Taxation Division
William P. Clements Building
300 West 15th Street, 6th Floor
Austin, Texas 78701
*Via email to: charles.eldred@texasattorneygeneral.gov*

**American Multi-Cinema, Inc.**
Texas Franchise Tax Taxpayer No. 1-43-0908577-8
Summary

| FOR REPORT YEAR: | 2008 | 2009 | TOTAL |
|---|---|---|---|
| **Tax Refund Request -Comptroller's** | $229,709 | $269,959 | $499,668 |
| **Tax Refund Request - AMC's** | $579,656 | $591,293 | $1,170,949 |
| **Plus Penalty, Assessed Interest and Judgment Interest** | TBD | TBD | TBD |

# Joint Exhibit 1

American Multi-Cinema, Inc.  
Kansas City, MO  
TAX ADJUSTMENT SUMMARY  

PAGE 1 OF 1  

TP#: 14309085778  

FOR REPORT YEAR: **2008**

| | (A) Original Audit Results | (B) | (C) FROM: Prior Data Per Last Report/Audit/ Refund/FVAR | (D) Adjusted Amounts per Verification | (E) Verification Results - From: Col. C or Col. D | |
|---|---|---|---|---|---|---|
| | | | | | **AMC's Calculation** | **Comptroller's Calculation** |
| | | REPORT TYPE: | Annual | | Annual | Annual |
| | | REPORT YEAR: | 2008 | | 2008 | 2008 |
| **R E V E N U E** | | COL.D & COL.E | | | | |
| ACCOUNTING YEAR ENDING | | FORWARDED FROM | 3/29/2007 | | 3/29/2007 | 3/29/2007 |
| 1. GROSS RECEIPTS OR SALES | | Col. C | 2,273,966,201 | | 2,273,966,201 | 2,273,966,201 |
| 2. DIVIDENDS | | Col. C | 0 | | 0 | 0 |
| 3. INTEREST | | Col. C | 189,656,324 | | 189,656,324 | 189,656,324 |
| 4. RENTS | | Col. C | 84,023 | | 84,023 | 84,023 |
| 5. ROYALTIES | | Col. C | 0 | | 0 | 0 |
| 6. GAINS/LOSSES | | Col. C | 5,570,498 | | 5,570,498 | 5,570,498 |
| 7. OTHER INCOME | | Col. C | 245,111,359 | | 245,111,359 | 245,111,359 |
| 8. TOTAL GROSS REVENUE | | SUM #1 - #7 | 2,714,388,405 | | 2,714,388,405 | 2,714,388,405 |
| 9. DEDUCTIONS FROM GROSS REVENUE | | Exam 2 | 72,707,860 | 2,697,127 | 2,697,127 | 2,697,127 |
| 10. TOTAL REVENUE | | #8 - #9 | $2,641,680,545 | | $2,711,691,278 | $2,711,691,278 |
| **C O S T   O F   G O O D S   S O L D** | | | | | | |
| 11. COST OF GOODS SOLD | | Exam 1 | 1,648,143,233 | 1,505,303,861 | **1,505,303,861** | **1,082,151,986** |
| 12. INDIRECT OR ADMIN COSTS | | Col. C | 9,117,635 | | 9,117,635 | 9,117,635 |
| 13. OTHER | | Col. C | 0 | | 0 | 0 |
| 14. TOTAL COST OF GOODS SOLD | | SUM #11 - #13 | $1,657,260,868 | | $1,514,421,496 | $1,091,269,621 |
| **C O M P E N S A T I O N** | | | | | | |
| 15. WAGES AND CASH COMPENSATION | | Col. C | 251,518,643 | | 251,518,643 | 251,518,643 |
| 16. EMPLOYEE BENEFITS | | Col. C | 12,009,024 | | 12,009,024 | 12,009,024 |
| 17. OTHER | | Col. C | 0 | | 0 | 0 |
| 18. TOTAL COMPENSATION | | SUM #15 - #17 | $263,527,667 | | $263,527,667 | $263,527,667 |
| **M A R G I N** | | | | | | |
| 19. REVENUE (#10 X 70%) | | **#10 X 70%** | 1,849,176,382 | | 1,898,183,895 | 1,898,183,895 |
| 20. REVENUE (#10 - COGS) | | **#10 - #14** | 984,419,677 | | 1,197,269,782 | 1,620,421,657 |
| 21. REVENUE (#10 - COMPENSATION) | | **#10 - #18** | 2,378,152,878 | | 2,448,163,611 | 2,448,163,611 |
| 22. MARGIN | | **LOWEST 19,20,21** | $984,419,677 | | $1,197,269,782 | $1,620,421,657 |
| **A P P O R T I O N M E N T   F A C T O R** | | | | | | |
| 23. GROSS RECEIPTS IN TEXAS | | Col. C | 226,143,616 | | 226,143,616 | 226,143,616 |
| 24  GROSS RECEIPTS EVERYWHERE | | Col. C | 2,735,517,882 | | 2,735,517,882 | 2,735,517,882 |
| 25. APPORTIONMENT FACTOR | | **#23 / #24** | 0.0827 | | 0.0827 | 0.0827 |
| **T A X A B L E   M A R G I N** | | | | | | |
| 26. APPORTIONED MARGIN | | **#22 X #25** | 81,411,507 | | 99,014,211 | 134,008,871 |
| 27. ALLOWABLE DEDUCTIONS | | Col. C | 0 | | 0 | 0 |
| 28.  TAXABLE MARGIN | | **# 26 - # 27** | $81,411,507 | | $99,014,211 | $134,008,871 |
| **T A X   D U E** | | | | | | |
| 29. TAX RATE | | Col. C | 0.0100 | | 0.0100 | 0.0100 |
| 30. TAX DUE | | **#28 X #29** | 814,115.07 | | 990,142.11 | 1,340,088.71 |
| **T A X   A D J U S T M E N T S** | | | | | | |
| 31. TAX CREDITS | | Exam 3 | 16,321.54 | 21,304.95 | 21,304.95 | 21,304.95 |
| 32. TAX DUE BEFORE DISCOUNT | | **#30 - #31** | 797,793.53 | | 968,837.16 | 1,318,783.76 |
| 33. DISCOUNT | | | 0.00 | | 0.00 | 0.00 |
| **34. TAX DUE** | | **#32 - #33** | $797,793.53 | | **$968,837.16** | **$1,318,783.76** |
| 35. LESS TAX PAID | | **Tax Reports** | 797,749.67 | | 1,548,493.13 | 1,548,493.13 |
| 36. TAX ADJUSTMENT | | **#34 - REPORTED** | $43.86 | | **($579,655.97)** | **($229,709.37)** |
| 37. OTHER REFUNDS ISSUED | | **Other Refunds** | 0.00 | | 0.00 | 0.00 |
| 38. OTHER FVAR REFUNDS OR ASSESSMENTS | | **Other FVARs** | 0.00 | | 0.00 | 0.00 |
| 39. OTHER BART REFUNDS OR ASSESSMENTS | | **Other BARTs** | 0.00 | | 0.00 | 0.00 |
| 40. OTHER AUDIT ADJUSTMENTS | | **Per Audit** | 0.00 | | 0.00 | 0.00 |
| 41. NET TAX ADJUSTMENT | | **#36-#37-#38-#39-#40** | $43.86 | | **($579,655.97)** | **($229,709.37)** |

**Joint Exhibit 1**

American Multi-Cinema, Inc.
Kansas City, MO
TAX ADJUSTMENT SUMMARY

**Original Audit**

PAGE 1 OF 1
Preparer/Date: KJ - 10/07/09
TP#: 14309085778

FOR REPORT YEAR: 2009

**Original Audit Results**

| | | FROM: Prior Data Per Last Report/Audit/ Refund/FVAR | Adjusted Amounts per Verification | Verification Results - From: Col. C or Col. D | |
|---|---|---|---|---|---|
| ( A ) | ( B ) | ( C ) | ( D ) | ( E ) | |
| | | | | **AMC's Calculation** | **Comptroller's Calculation** |
| REPORT TYPE: | | Annual | | Annual | Annual |
| REPORT YEAR: | | 2009 | | 2009 | 2009 |
| **R E V E N U E** | COL.D & COL.E | | | | |
| ACCOUNTING YEAR ENDING | FORWARDED FROM | 4/3/2008 | | 4/3/2008 | 4/3/2008 |
| 1. GROSS RECEIPTS OR SALES | Col. C | 2,282,273,284 | | 2,282,273,284 | 2,282,273,284 |
| 2. DIVIDENDS | Col. C | 574,130 | | 574,130 | 574,130 |
| 3. INTEREST | Col. C | 188,097,438 | | 188,097,438 | 188,097,438 |
| 4. RENTS | Col. C | 0 | | 0 | 0 |
| 5. ROYALTIES | Col. C | 216,626 | | 216,626 | 216,626 |
| 6. GAINS/LOSSES | Col. C | (13,370,666) | | (13,370,666) | (13,370,666) |
| 7. OTHER INCOME | Col. C | 73,894,886 | | 73,894,886 | 73,894,886 |
| 8. TOTAL GROSS REVENUE | SUM #1 - #7 | 2,531,685,698 | | 2,531,685,698 | 2,531,685,698 |
| 9. DEDUCTIONS FROM GROSS REVENUE | Col. C | 130,697 | | 130,697 | 130,697 |
| 10. TOTAL REVENUE | #8 - #9 | $2,531,555,001 | | $2,531,555,001 | $2,531,555,001 |
| **C O S T   O F   G O O D S   S O L D** | | | | | |
| 11. COST OF GOODS SOLD | Exam 1 | 1,660,610,572 | 1,514,869,422 | **1,514,869,422** | **1,099,171,074** |
| 12. INDIRECT OR ADMIN COSTS | Col. C | 9,530,393 | | 9,530,393 | 9,530,393 |
| 13. OTHER | Col. C | 0 | | 0 | 0 |
| 14. TOTAL COST OF GOODS SOLD | SUM #11 - #13 | $1,670,140,965 | | $1,524,399,815 | $1,108,701,467 |
| **C O M P E N S A T I O N** | | | | | |
| 15. WAGES AND CASH COMPENSATION | Col. C | 208,369,216 | | 208,369,216 | 208,369,216 |
| 16. EMPLOYEE BENEFITS | Col. C | 3,398,514 | | 3,398,514 | 3,398,514 |
| 17. OTHER | Col. C | 0 | | 0 | 0 |
| 18. TOTAL COMPENSATION | SUM #15 - #17 | $211,767,730 | | $211,767,730 | $211,767,730 |
| **M A R G I N** | | | | | |
| 19. REVENUE (#10 X 70%) | #10 X 70% | 1,772,088,501 | | 1,772,088,501 | 1,772,088,501 |
| 20. REVENUE (#10 - COGS) | #10 - #14 | 861,414,036 | | 1,007,155,186 | 1,422,853,534 |
| 21. REVENUE (#10 - COMPENSATION) | #10 - #18 | 2,319,787,271 | | 2,319,787,271 | 2,319,787,271 |
| 22. MARGIN | LOWEST 19,20,21 | $861,414,036 | | $1,007,155,186 | $1,422,853,534 |
| **A P P O R T I O N M E N T   F A C T O R** | | | | | |
| 23. GROSS RECEIPTS IN TEXAS | Col. C | 195,814,649 | | 195,814,649 | 195,814,649 |
| 24 GROSS RECEIPTS EVERYWHERE | Col. C | 2,531,685,697 | | 2,531,685,697 | 2,531,685,697 |
| 25. APPORTIONMENT FACTOR | #23 / #24 | 0.0773 | | 0.0773 | 0.0773 |
| **T A X A B L E   M A R G I N** | | | | | |
| 26. APPORTIONED MARGIN | #22 X #25 | 66,587,305 | | 77,853,096 | 109,986,578 |
| 27. ALLOWABLE DEDUCTIONS | Col. C | 0 | | 0 | 0 |
| 28. TAXABLE MARGIN | # 26 - # 27 | $66,587,305 | | $77,853,096 | $109,986,578 |
| **T A X   D U E** | | | | | |
| 29. TAX RATE | Col. C | 0.0100 | | 0.0100 | 0.0100 |
| 30. TAX DUE | #28 X #29 | 665,873.05 | | 778,530.96 | 1,099,865.78 |
| **T A X   A D J U S T M E N T S** | | | | | |
| 31. TAX CREDITS | Exam 3 | 16,321.54 | $ 20,911.35 | 20,911.35 | 20,911.35 |
| 32. TAX DUE BEFORE DISCOUNT | #30 - #31 | 649,551.51 | | 757,619.61 | 1,078,954.43 |
| 33. DISCOUNT | | 0.00 | | 0.00 | 0.00 |
| **34. TAX DUE** | #32 - #33 | $649,551.51 | | **$757,619.61** | **$1,078,954.43** |
| 35. LESS TAX PAID | Tax Reports | 649,507.99 | | 1,348,913.06 | 1,348,913.06 |
| 36. TAX ADJUSTMENT | #34 - REPORTED | $43.52 | | ($591,293.45) | ($269,958.63) |
| 37. OTHER REFUNDS ISSUED | Other Refunds | 0.00 | | 0.00 | 0.00 |
| 38. OTHER FVAR REFUNDS OR ASSESSMENTS | Other FVARs | 0.00 | | 0.00 | 0.00 |
| 39. OTHER BART REFUNDS OR ASSESSMENTS | Other BARTs | ◄ 0.00 | | 0.00 | 0.00 |
| 40. OTHER AUDIT ADJUSTMENTS | Per Audit | ◄ 0.00 | | 0.00 | 0.00 |
| 41. NET TAX ADJUSTMENT | #36-#37-#38-#39-#40 | $43.52 | | ($591,293.45) | ($269,958.63) |

**Joint Exhibit 1**

**AMC ENTERTAINMENT, INC.**
**TEXAS FRANCHISE TAX AUDIT**
**COST OF GOODS SOLD SUMMARY**
**REPORT YEAR 2008**

| ACCOUNT | ACCOUNT DESCRIPTION | Stipulated Total | AMC | Comptroller |
|---|---|---|---|---|
| 60001 | FILM RENT ESTIMATES | 829,788,277 | 829,788,277 | 829,788,277 |
| 82001 | BASE RENT (excludes HQ) | 400,927,789 | **271,307,835** | **53,804,509** |
| 80401 | DEPR EXP - FF & E | 111,245,459 | **75,279,802** | **14,929,141** |
| 83004 | REAL ESTATE TAX EXPENSE | 75,664,772 | **51,202,351** | **10,154,212** |
| 63001 | UTILITIES | 72,330,866 | **48,946,297** | **9,706,802** |
| 61001 | CONCESSIONS MDSE COSTS | 68,241,492 * | 68,241,492 | 68,241,492 |
| 80901 | DEPR EXP - L/I | 62,385,700 | **42,216,403** | **8,372,161** |
| 62001 | HOURLY WAGES | 37,427,506 * | 37,427,506 | 37,427,506 |
| 64501 | MAINTENANCE EXPENSE | 22,828,015 | **15,447,718** | **3,063,520** |
| 60501 | NEWSPAPER SUSTAINING | - (1) | **-** | **-** |
| 82002 | PERCENTAGE RENT | 7,412,273 | **5,015,885** | **994,727** |
| 81401 | DEPR EXP - BLDGS | 6,346,752 | **4,294,847** | **851,734** |
| 83005 | PERSONAL PROP. TAX EXPENSE | 5,508,574 | 5,508,574 | 5,508,574 |
| 60101 | FILM TAXES | 5,227,983 | 5,227,983 | 5,227,983 |
| 84006 | PROPERTY INSURANCE | 4,989,523 | **3,376,410** | **669,594** |
| 60002 | FILM RENT BUYER ADJST | 3,801,473 | 3,801,473 | 3,801,473 |
| 60509 | OTHER ADVERTISING | 3,273,708 | 3,273,708 | 3,273,708 |
| 82003 | SPACE RENT SALES TAX | 3,047,699 | **2,062,378** | **409,001** |
| 67001 | FILM FREIGHT | 2,414,505 | 2,414,505 | 2,414,505 |
| 60503 | PRE-ENTERTAINMENT EXPENSE | 1,828,538 | 1,828,538 | 1,828,538 |
| 81601 | DEPR-CAP LEASES BLDG | 1,461,545 | **989,027** | **196,139** |
| 62004 | SALARIES 10500 FILM PROGRAMMING | 1,428,179 | 1,428,179 | 1,428,179 |
| 62004 | SALARIES 95400 FILM PROGRAMMING KC | 866,120 | 866,120 | 866,120 |
| 62004 | SALARIES 10910 PROCUREMENT | 139,137 | 139,137 | 139,137 |
| 62012 | OVERTIME PAY | 703,605 * | 703,605 | 703,605 |
| 60502 | COOP AND MULTIPLES ADV | 612,955 | 612,955 | 612,955 |
| 62004 | SALARIES 96300 FOOD AND BEVERAGE | 451,898 | 451,898 | 451,898 |
| 82004 | SPACE RENT INSURANCE | 240,542 | **162,775** | **32,281** |
| 82006 | MERCHANT'S ASSOCIATION RENT | 244,919 | **165,737** | **32,868** |
| 60102 | FILM RENT - FOUR WALLS | 178,389 | **120,716** | **23,940** |
| 62014 | ACCR HOURLY PAY | 134,811 * | 134,811 | 134,811 |
| 64503 | MAINTENANCE - LABOR | 84,886 | **57,442** | **11,392** |
| 60506 | ADVERTISING ACCESSORIES | 33,945 | 33,945 | 33,945 |
| 61003 | COST OF T-SHIRTS & MDSE. | 7,249 * | 7,249 | 7,249 |
| 61004 | SALES TAX ON CONC/MDSE/ADM | 144 | 144 | 144 |
| 60003 | FILM RENT SETTLMENT ADJST | (310,826) | (310,826) | (310,826) |
| 60507 | PREOPENING ADVERTISING | (566,963) | (566,963) | (566,963) |
| 60004 | H.O. FILM RENT ADJUSTMENT | (1,326,230) | (1,326,230) | (1,326,230) |
| 82301 | CAP LEASE CONTRA - BLDG | (7,961,874) | **(5,387,800)** | **(1,068,483)** |
| *DIRECT COGS FOR FEDERAL GROUP* | | 1,721,113,334 | 1,474,943,903 | 1,061,869,617 |
| 60001 | LOEKS FILM RENT ESTIMATES | 17,614,418 | 17,614,418 | 17,614,418 |
| 60002 | LOEKS FILM RENT BUYER ADJUSTMENT | 280,708 | 280,708 | 280,708 |
| 60003 | LOEKS FILEM RENT SETTLEMENT ADJUSTMI | 22,248 | 22,248 | 22,248 |
| 60004 | LOEKS HO FILM RENT ADJUSTMENT | (58,772) | (58,772) | (58,772) |
| 67001 | LOEKS FILM FREIGHT | 59,276 | 59,276 | 59,276 |
| | LOEKS-STAR COGS | 18,386,407 | **12,442,082** | **2,364,492** |
| *TOTAL DIRECT COGS* | | 1,757,417,618 | *1,505,303,861* | *1,082,151,986* |
| | Indirect COGS | 9,117,635 | 9,117,635 | 9,117,635 |
| *TOTAL COGS* | | 1,766,535,253 | 1,514,421,496 | 1,091,269,621 |

\* Agreed in Audit.
(1) Agreed by AMC to withdraw.
Note: Amounts in bold adjusted to reflect 67.67% of the total for AMC and 13.42% of the total for the Comptroller's positions.

---

**AMC ENTERTAINMENT, INC.**
**TEXAS FRANCHISE TAX AUDIT**
**COST OF GOODS SOLD SUMMARY**
**REPORT YEAR 2009**

| ACCOUNT | ACCOUNT DESCRIPTION | Stipulated Total | AMC | Comptroller |
|---|---|---|---|---|
| 60001 | FILM RENT ESTIMATES | 840,563,482 | 840,563,482 | 840,563,482 |
| 82001 | BASE RENT (excludes HQ) | 409,177,901 | **276,890,685** | **54,911,674** |
| 80401 | DEPR EXP - FF & E | 105,691,205 | **71,521,239** | **14,183,760** |
| 83004 | REAL ESTATE TAX EXPENSE | 77,863,009 | **52,689,898** | **10,449,216** |
| 63001 | UTILITIES | 75,677,010 | **51,210,633** | **10,155,855** |
| 61001 | CONCESSIONS MDSE COSTS | 71,332,206 * | 71,332,206 | 71,332,206 |
| 80901 | DEPR EXP - L/I | 60,094,001 | **40,665,610** | **8,064,615** |
| 62001 | HOURLY WAGES | 38,152,292 * | 38,152,292 | 38,152,292 |
| 64501 | MAINTENANCE EXPENSE | 23,018,665 | **15,576,730** | **3,089,105** |
| 60501 | NEWSPAPER SUSTAINING | 0 (1) | 0 | 0 |
| 82002 | PERCENTAGE RENT | 7,273,236 | **4,921,799** | **976,068** |
| 81401 | DEPR EXP - BLDGS | 7,453,921 | **5,044,068** | **1,000,316** |
| 83005 | PERSONAL PROP. TAX EXPENSE | 4,835,928 | 4,835,928 | 4,835,928 |
| 60101 | FILM TAXES | 5,687,074 | 5,687,074 | 5,687,074 |
| 84006 | PROPERTY INSURANCE | 4,751,824 | **3,215,559** | **637,695** |
| 60002 | FILM RENT BUYER ADJST | 14,033,702 | 14,033,702 | 14,033,702 |
| 60509 | OTHER ADVERTISING | 1,683,048 | 1,683,048 | 1,683,048 |
| 82003 | SPACE RENT SALES TAX | 3,132,739 | **2,119,925** | **420,414** |
| 67001 | FILM FREIGHT | 2,495,334 | 2,495,334 | 2,495,334 |
| 60503 | PRE-ENTERTAINMENT EXPENSE | 16,314,311 | 16,314,311 | 16,314,311 |
| 81601 | DEPR-CAP LEASES BLDG | 1,353,777 | **916,101** | **181,677** |
| 62004 | SALARIES 10500 FILM PROGRAMI | 1,508,073 | 1,508,073 | 1,508,073 |
| 62004 | SALARIES 96300 FOOD AND BEVE | 725,737 | 725,737 | 725,737 |
| 62004 | SALARIES 95400 FILM PROGRAMI | 707,862 | 707,862 | 707,862 |
| 62012 | OVERTIME PAY | 676,625 | 676,625 | 676,625 |
| 82004 | SPACE RENT INSURANCE | 258,363 | **174,834** | **34,672** |
| 82006 | MERCHANT'S ASSOCIATION RENT | 233,011 | **157,678** | **31,270** |
| 62004 | SALARIES 10910 PROCUREMENT | 175,253 | 175,253 | 175,253 |
| 64503 | MAINTENANCE - LABOR | 64,621 | **43,729** | **8,672** |
| 60506 | ADVERTISING ACCESSORIES | 5,733 | 5,733 | 5,733 |
| 61003 | COST OF T-SHIRTS & MDSE. | (3,224) * | (3,224) | (3,224) |
| 60102 | FILM RENT - FOUR WALLS | (34,544) | **(23,376)** | **(4,636)** |
| 60507 | PREOPENING ADVERTISING | 1,928,637 | 1,928,637 | 1,928,637 |
| 62014 | ACCR HOURLY PAY | (676,100) * | (676,100) | (676,100) |
| 60004 | H.O. FILM RENT ADJUSTMENT | (3,807,559) | (3,807,559) | (3,807,559) |
| 82301 | CAP LEASE CONTRA - BLDG | (9,744,504) | **(6,594,106)** | **(1,307,712)** |
| *TOTAL DIRECT COGS* | | 1,762,602,649 | *1,514,869,422* | *1,099,171,074* |
| | Indirect COGS | 9,530,393 | 9,530,393 | 9,530,393 |
| *TOTAL COGS* | | 1,772,133,042 | 1,524,399,815 | 1,108,701,467 |

\* Agreed in Audit.
(1) Agreed by AMC to withdraw.
Note: Amounts in bold adjusted to reflect 67.67% of the total for AMC and 12.86% of the total for the Comptroller's

**Joint Exhibit 1**