# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00260-CV

**H.K. Global Trading, Ltd., Appellant**

**v.**

**Susan Combs, Comptroller of Public Accounts of the State of Texas; and Greg Abbott, Attorney General of the State of Texas, Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
NO. D-1-GN-11-002632, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING**

---

## O P I N I O N

This appeal from a sales tax assessment concerns facial constitutional challenges to subsections (d) and (e) of section 151.307 of the Tax Code. *See* Tex. Tax Code § 151.307(d), (e). Following a bench trial, the trial court granted a take nothing verdict against appellant H.K. Global Trading, Ltd. and concluded that the challenged subsections did not facially violate the Import-Export Clause of the United States Constitution. *See* U.S. Const. art. I, § 10, cl. 2. For the reasons that follow, we affirm the trial court's judgment.

## BACKGROUND

The facts are not disputed. The sales transactions at issue occurred between September 1, 2000, and July 31, 2004, at H.K. Global stores that are located in Texas counties bordering Mexico. In those transactions, customers purchased goods, paid sales tax, and took

possession of the goods at the time of the sale.[1] H.K. Global later refunded the customers the amount of sales taxes they paid for the goods based on the presentation of an U.S. Customs Broker Export Certificate ("export certificate"). *See* Tex. Tax Code § 151.307(b)(2); *see also id*. § 151.157 (addressing customs brokers). Subsection (b)(2) lists export certificates among the documentation that shows "proof of export." *Id*. § 151.307(b)(2). Although the goods were exported out of the country, H.K. Global refunded the sales taxes prior to the expiration of a statutory 24 hour waiting period contained in section 151.307(d)(1). *See id*. § 151.307(d)(1). Section 151.307(d)(1) provides:

> (d)     A retailer who receives documentation under Subsection (b)(2) relating to the purchase of tangible personal property exported beyond the limits of the United States may not refund the tax paid under this chapter on that purchase before:
>
> (1)     the 24th hour after the hour stated as the time of export on the documentation, if the retailer is located in a county that borders the United Mexican States; . . . .

*Id.* By refunding sales taxes prior to the expiration of the waiting period, H.K. Global violated subsection (d). *See id.*[2]

In 2005, the Comptroller issued a Texas Notification of Audit result. The Comptroller determined that the refunds at issue violated section 151.307(d)(1) and, thus, that H.K. Global was liable for $475,053.83, the amount of sales taxes refunded and statutorily imposed

---

[1]   H.K. Global stores sell tangible personal property such as electronics, fragrances, cosmetics, and watches.

[2]   Subsection (d)(2) of section 151.307 provides a seven-day waiting period for retailers located in counties that do not border the "United Mexican States" (Mexico). Tex. Tax Code § 151.307(d)(2). The transactions at issue concerned H.K. Global stores located in counties that border Mexico so the applicable waiting period was 24 hours.

2

interest. *See id.* § 151.307(d), (e). H.K. Global paid the assessment and interest under protest, exhausted its administrative remedies, and then sued to recover the amount it paid. H.K. Global contended that it was not liable for the assessment because the 24 hour provision facially violated the Import-Export Clause of the United States Constitution. *See* U.S. Const. art. I, § 10, cl. 2.

The case was tried to the bench. The parties stipulated to the facts and that the sole issue before the court was "whether the 24 Hour Rule facially violates Article I, section 10, clause 2, the 'Import-Export Clause' of the United States Constitution." The parties waived "[a]ny other issues raised by either party in the Texas Notification Audit Results, the administrative proceeding, or the pleadings in this case." The parties' witnesses primarily testified about H.K. Global's business, how the statutory 24 hour waiting period works in practice, and the reasons behind its enactment. The evidence showed that the primary reason was to prevent fraud. During the relevant period of time, Texas customs brokers issued export certificates upon visual verification of the tangible personal property leaving the country, but some brokers were issuing certificates on the same day as the date of purchase, raising concerns with the validity of export certificates.[3]

The trial court entered a take nothing judgment against H.K. Global. The trial court also entered findings of fact and conclusions of law. The trial court referred to subsections (d) and (e) as the "24 Hour Rule," and its conclusions of law included that the "24 Hour Rule [was] not a tax" and that it did not facially violate the Import-Export Clause. The trial court also concluded:

---

[3] Effective January 1, 2004, section 151.1575 provides alternative ways for a customs broker to determine that tangible personal property has been or will be exported out of the country in addition to visual verification. *See* Tex. Tax Code § 151.1575.

3

Under Tex. Tax Code § 151.307(e), Plaintiff is liable for $475,053.83, plus statutorily imposed interest, for sales tax improperly refunded to its customers prior to the expiration of 24 hours from the time documented on the U.S. Customs Broker Export Certificate.

This appeal followed.

## ANALYSIS

H.K. Global raises eight issues on appeal. In its first seven issues, H.K. Global argues that subsections (d) and (e) of section 151.307 violate the Import-Export Clause because they are either a "direct tax on retailers and consumers related to goods undisputedly exported out of the country" or an "indirect tax that fails the Import/Export analysis set forth in U.S. Supreme Court precedent." H.K. Global also attacks specific conclusions of law. In its eighth issue, H.K. Global asserts that the trial court erred by failing to make additional findings of fact and conclusions of law.

**Did the trial court have subject matter jurisdiction to consider section 151.307(e)?**

As a threshold matter, appellees urge that the trial court's jurisdiction was limited to H.K. Global's challenge to section 151.307(d) because it did not cite section 151.307(e) in its protest letter. Subsection (e) addresses a retailer's liability for violations of subsections (b) and (d). Tex. Tax Code § 153.307(e). The subsection states:

> (e) A retailer who makes a refund before the time prescribed by Subsection (d) or makes a refund that is undocumented or improperly documented is liable for the amount of the tax refunded with interest.

*Id.*

The issues in a tax-protest suit "are limited to those arising from the reasons expressed in the written protest as originally filed." *See id.* § 112.053(b); *see also id*. § 112.051(b) ("The protest must be in writing and must state fully and in detail each reason for recovering the payment."); *In re Nestle, USA, Inc.*, 359 S.W.3d 207, 208–09 (Tex. 2012) (generally describing requirements of protest letter). Although H.K. Global did not expressly cite section 153.307(e) in its protest letter, H.K. Global expressly cited section 151.307, quoted section 151.307(a), and stated that the Comptroller violated section 151.307(a) and that the "24-hour rule contained in Tex. Tax Code § 151.307(d) [was] unconstitutional." It then challenged the assessment against it—the substance of subsection (e)—for violating the "24-hour Rule." Among others, H.K. Global stated in its protest letter:

- This sales tax assessment arises from a violation of the 24-Hour Rule under § 151.307(d) of the Texas Tax Code.

- Since Petitioner is claiming an exemption under Tex. Tax Code § 151.307, the Comptroller should have ruled on Petitioner's claims because the assessment violates the U.S. Constitution.

- Petitioner is protesting the assessment of this tax, along with interest, because it is a violation of the U.S. Const., Art. 1, § 10, cl. 2.

Based on our review of the protest letter, we conclude that H.K. Global sufficiently alerted the Comptroller to its constitutional challenge to section 151.307 and, therefore, that the trial court had jurisdiction to consider both subsections (d) and (e) of that section. *See Lawrence Indus., Inc. v. Sharp*, 890 S.W.2d 886, 892–93 (Tex. App.—Austin 1994, writ denied) (concluding use of phrase "was sufficient to alert the Comptroller to the subject matter of the protest as required by the

Tax Code, thereby giving the trial court jurisdiction over [challenged claim]"); *see also Suleman v. McBeath*, 614 S.W.2d 637, 639–40 (Tex. Civ. App.—Texarkana 1981, writ ref'd n.r.e.) (addressing predecessor to current version of statute and holding that trial court had jurisdiction to hear controversy although "wording of appellant's protest letter leaves much to be desired"). We turn then to our analysis of H.K. Global's issues.[4]

**Do subsections (d) and (e) of section 151.307 violate the Import-Export Clause?**

In its first seven issues, H.K. Global argues that the trial court erred in holding that subsections (d) and (e) of section 151.307 do not violate the Import-Export Clause. It argues that subsections (d) and (e) "constitute a direct tax on tangible personal property after it has been undisputedly exported from the territorial jurisdiction of the United States," and that the subsections fail Import-Export Clause analysis. The Import-Export Clause of the United States Constitution provides in relevant part: "No State shall, without the consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspection Laws." U.S. Const. art. I, § 10, cl. 2.

H.K. Global urges that the subsections fail Import-Export Clause analysis because (i) there is a risk of multiple taxation, (ii) they impair federal uniformity, (iii) they "discriminate[] against legitimate foreign shoppers," and (iv) they are not reasonably related to services

---

[4] Because we conclude that the protest letter was sufficient, we do not address H.K. Global's arguments that support its position that the trial court had jurisdiction in any case over the constitutional challenges to the statute. *See* Tex. R. App. P. 47.1 (requiring courts of appeals to "hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal").

provided by the State of Texas. *See Michelin Tire Corp. v. Wages*, 423 U.S. 276, 285–86 (1976) (describing reasons behind and analysis of Import-Export Clause to determine whether a tax constitutes an impermissible impost or duty); *Virginia Indonesia Co. v. Harris Cnty. Appraisal Dist.*, 910 S.W.2d 905, 907–08 (Tex. 1995) (describing analysis of challenge to tax based on Import-Export Clause and "stream of export" doctrine).

H.K. Global also attacks conclusions of law 3, 5-8, 11-13, 15, and 18-22, which conclusions we review de novo and uphold if the judgment can be sustained on any legal theory supported by the evidence. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). The challenged conclusions of law state:

3. The Texas sales tax is an indirect tax on the sale transaction, not a direct tax on tangible personal property in transit.

. . . .

5. The 24 Hour Rule is not a tax.

6. The 24 Hour Rule is a requirement placed on obtaining a refund of Texas sales tax for items that are purchased and taken possession of in a store within the State and subsequently exported out of the country.

7. To obtain a refund of sales tax paid, a customer who takes possession of tangible personal property in a store and subsequently exports the item out of the country must obtain a U.S. Customs Broker Export Certificate ("export certificate") and present it, along with the original receipt, to the retailer that collected sales tax on the initial transaction.

8. Retailers may only issue a sales tax refund if the export certificate is valid on its face and if 24 hours have elapsed from the time of export stated on the export certificate, as required by Tex. Tax Code § 151.307(d).

. . . .

11.    If a retailer issues a sales tax refund prior to the expiration of the 24th hour following the time of export, then under Tex. Tax Code 151.307(e), the retailer is liable to the Comptroller of Public Accounts for the amount of the tax refunded, plus interest.

12.    Texas Tax Code §§ 151.307(d) and (e), the 24 Hour Rule, must be followed to obtain a refund of the Texas sales tax for items exported.

13.    The Texas sales tax imposed on the purchase transaction in a store in Texas does not violate art. 1, § 10, cl. 2, of the United States Constitution, the Import-Export Clause; the 24 Hour Rule placed on obtaining a sales tax refund does not facially violate the Import-Export Clause.

. . . .

15.    Neither the Texas sales tax nor the 24 Hour Rule impede the federal government's ability to regulate foreign commerce or disrupt the foreign policy of the United States.

. . . .

18.    The Texas sales tax and 24 Hour Rule are imposed equally and uniformly on sales transactions in the State of Texas and do not discriminate against interstate commerce.

19.    The Texas sales tax and 24 Hour Rule are reasonably related to services provided by the State of Texas.

20.    Neither the Texas sales tax nor the 24 Hour Rule disrupt the harmony among the States.

21.    The 24 Hour Rule does not facially violate art. 1, § 10, cl. 2, of the United States Constitution, the Import-Export Clause.

22.    Under Tex. Tax Code § 151.307(e), Plaintiff is liable for $475,053.83, plus statutorily imposed interest, for sales tax improperly refunded to its customers prior to the expiration of 24 hours from the time documented on the U.S. Customs Broker Export Certificate.

Because H.K. Global challenges the statute on its face, it "'must establish that the statute, by its terms, always operates unconstitutionally'" in violation of the Import-Export Clause. *See City of Corpus Christi v. Public Util. Comm'n*, 51 S.W.3d 231, 240–41 (Tex. 2001) (quoting *Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 627 (Tex. 1996) (citing *Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 (Tex. 1995))). The controlling issue then is whether H.K. Global established that there is no circumstance under which subsections (d) and (e) could operate in compliance with the Import-Export Clause.[5]

For purposes of this appeal, section 151.307(a) exempts from sales tax purchased goods that are exported outside the country. *See* Tex. Tax Code §§ 151.051(a) ("A tax is imposed on each sale of a taxable item in this state."); 151.307(a) ("Tangible personal property . . . that this state is prohibited from taxing by . . . the United States Constitution . . . is exempted from the taxes imposed by this chapter."); *see also* U.S. Const. art. I, § 10, cl. 2. When an exemption is claimed under section 151.307(a) because goods have been exported outside the country, subsection (b) lists

---

[5] To the extent that we must interpret the statutes at issue, our standard of review is well established. We review the plain text of the subsections in the context of the statutory scheme. *See Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 628 (Tex. 2011) (construing statute in context of statutory scheme); *Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010) (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)) (noting that courts must "construe the text according to its plain and common meaning unless a contrary intention is apparent from the context or unless such a construction leads to absurd results"). And we interpret the subsections, if possible, in a way that makes them constitutional. *See City of Pasadena v. Smith*, 292 S.W.3d 14, 19 (Tex. 2009); *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 170 (Tex. 2004) ("A statute is presumptively constitutional." (citing *Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 625 (Tex. 1996))).

documents that show "proof of export." Tex. Tax Code. § 151.307(b).[6] The documents include bills of lading, import documents from the country of destination, and export certificates. *Id*.

The export certificate, among other requirements, must "certify[ ] that delivery was made to a point outside the territorial limits of the United States." *Id.* An export certificate from a licensed customs broker "is presumed valid in the absence of clear and convincing evidence that the tangible personal property covered by the documentation was not exported outside the territorial limits of the United States." *Id*. § 151.307(c); *see also* 34 Tex. Admin. Code § 3.323(c)(5) (explaining "rebuttable presumption" that an export certificate is valid). As previously stated, subsection (d) then requires a waiting period for retailers presented with an export certificate, and subsection (e) holds retailers liable for the amount of tax refunded with interest when a retailer makes a refund without proper documentation or before the waiting period expires. Tex. Tax Code § 151.307(b), (d), (e).[7]

H.K. Global does not challenge the section of the Tax Code imposing sales tax or dispute its obligation to collect sales tax at the time of each sale on the transactions at issue. *See id*. § 151.051 (sales tax provision); *Macias v. Rylander*, 40 S.W.3d 679, 684–85 (Tex. App.—Austin 2001, pet. denied) (noting, in context of claim for exemption under section 151.307, that sales tax generally "accrues at the point of sale and the export exemption subsequently acts to exempt the merchandise from the tax"). At the point of the sale, the customers took possession of the goods,

---

[6] Section 151.307(b) was amended in 2004, but the amendment is not relevant to this appeal. *See* Act of May 28, 2003, 78th Leg., R.S., ch. 1001, § 4, 2003 Tex. Gen. Laws 2935, 2938–39.

[7] The final subsection, subsection (f), defines terms that are not relevant to this appeal. Tex. Tax Code § 151.307(f).

and H.K. Global did not know whether the customers planned to export the goods or not.[8]

H.K. Global also does not dispute that it held the collected sales taxes in trust for the Comptroller. *See* Tex. Tax Code § 111.016(a) ("Any person who receives or collects a tax . . . from another person holds the amount so collected in trust for the benefit of the state and is liable to the state for the full amount collected plus any accrued penalties and interest on the amount collected.").[9] Further, H.K. Global does not dispute that the initial sales taxes it collected would have been fully refundable at the conclusion of the statutory waiting period in section 151.307(d). In other words, the waiting period in section 151.307(d) does not prevent the full refund of sales taxes paid on exported goods; rather, it delays it.

Viewing section 151.307(d) in this context, it does not impose a tax but a procedural requirement for the customer to obtain a sales tax refund. The waiting period is analogous to other procedural requirements in section 151.307, such as the requirement in subsection (b) that the customer present "proof of export" to a retailer in order to obtain a refund of sales tax. *See id*. § 151.307(b). H.K. Global has not cited, and we have not found, any authority in which a court invalidated a statute imposing an analogous procedural requirement based on the Import-Export

---

[8] The trial court's unchallenged conclusions of law included: "At the time of purchase of tangible personal property in a store in Texas, the tangible personal property has not entered the export stream."

[9] The trial court's unchallenged conclusions of law also included: "Retailers hold the sales tax they collect in trust for the State of Texas."

11

Clause. *Cf. Michelin Tire Corp.*, 423 U.S. at 278 (addressing ad valorem property tax); *Virginia Indonesia Co.*, 910 S.W.2d at 907–08 (addressing ad valorem property tax).[10]

H.K. Global urges that the waiting period is arbitrary and that the "additional hurdle [the 24 hour waiting period], no matter how minimum, violates the Import/Export Clause." H.K. Global argues that subsections (d) and (e) "when read together" are a direct tax on exports because, "once the goods have conclusively been exported in a manner approved by the Comptroller, the State of Texas is no longer entitled to the sales tax." To support its argument, H.K. Global points to the presumption in subsection (c) that an export certificate is valid. *See* Tex. Tax Code § 151.307(c). The plain text of subsection (c), however, recognizes that "clear and convincing evidence" may rebut the presumption that an export certificate is valid. *Id.* Thus, the statute does not foreclose the situation in which goods were not actually exported out of the country even though an export certificate, valid on its face, was presented to a retailer.[11]

Further, as to subsection (e), retailers also are liable for the amount of tax refunded when they make a refund without documentation or when the documentation is improper. *See id.* § 151.307(b), (e). H.K. Global does not challenge the constitutionality of holding the retailer liable for the amount of sales tax refunded and interest in these situations. Given that H.K. Global's

---

[10] *See, e.g*, *Richfield Oil Corp. v. State Bd. of Equalization*, 329 U.S. 69, 83–84 (1946) (addressing tax levied on retailer "for privilege of conducting a retail business measured by gross receipts from sales," concluding that tax was unconstitutional as applied to transaction at issue, and noting "incident which gave rise to the accrual of the tax was a step in the export process").

[11] The record reflects this scenario. Appellees presented evidence that retailers were refunding sales tax prior to the 24 hour waiting period based on export certificates that appeared valid on their face but that were not because the goods remained in the country.

burden was to show that subsection (e) always operates unconstitutionally, H.K. Global's facial

challenge to subsection (e) fails on this basis alone.

We also note that H.K. Global does not challenge the trial court's findings of fact and,

among its findings, the trial court found:

- Texas is the only state in the United States of America that permits a customer to seek a sales tax refund after purchasing and taking possession of tangible personal property in a store within a state.

- A customer could purchase an item in one of Plaintiff's stores for export to another country without being subject to the 24 hour rule. For example, a customer could avoid application of the 24 hour rule by arranging for export beyond the territorial limits of the United States and providing a bill of lading in accordance with Tex. Tax. Code § 151.307(b)(1).

In other states, then, a customer who subsequently exports goods out of the country does not receive

a sales tax refund if he or she takes possession of the goods at the time of purchase, and section

151.307 provides alternatives that do not require a waiting period for a customer to claim an

exemption from sales tax.

In the context of the statutory scheme and given that we have identified situations in

which subsections (d) and (e) of section 151.307 would apply but their application would not violate

the Import-Export Clause, we conclude that H.K. Global failed to establish that the subsections

always violate the Import-Export Clause. *See Public Util. Comm'n*, 51 S.W.3d at 240–41. We need

go no further in our analysis of H.K. Global's facial constitutional challenge to subsections (d) and

13

(e).  *See* Tex. R. App. P. 47.1; *BMC Software Belg., N.V.*, 83 S.W.3d at 794.  On this basis, we overrule H.K. Global's first seven issues.[12]

**Did the trial court err by failing to make additional findings of fact and conclusions of law?**

In its eighth issue, H.K. Global contends that the trial court erred by failing to make additional findings of fact and conclusions of law after H.K. Global requested that it do so.  After a trial court files original findings of fact and conclusions of law, a party may request "specified additional or amended findings or conclusions," requiring the trial court to "file any additional or amended findings or conclusions that are appropriate."  Tex. R. Civ. P. 298.  If a trial court errs by failing to make additional or amended findings or conclusions, there is no reversible error if the refusal to file additional findings does not prevent a party from adequately presenting an argument on appeal.  *Flanary v. Mills*, 150 S.W.3d 785, 792 (Tex. App.—Austin 2004, pet. denied).  Further, "if the requested findings and conclusions will not result in a different judgment, those findings need not be made."  *Id.*  "A trial court is not required to set out in detail every reason or theory by which it arrived at its final conclusions."  *Associated Tel. Directory Publishers, Inc. v. Five D's Publ'g Co.*, 849 S.W.2d 894, 901 (Tex. App.—Austin 1993, no writ).

H.K. Global requested additional findings as to the "possibility of double taxation," "[b]urden on foreign nationals," "[w]aiting period imposed by other States for sales tax refunds,"

---

[12]  To the extent H.K. Global attacks the wisdom of the statute, we need and indeed should not address its arguments because they do not impact our analysis of its facial constitutional challenges.  *See Texas Workers Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 520 (Tex. 1995) ("The wisdom or expediency of the law is the Legislature's prerogative, not ours." (quoting *Smith v. Davis*, 462 S.W.2d 827, 831 (Tex. 1968))); *Hebert v. Hopkins*, 395 S.W.3d 884, 896 (Tex. App.—Austin 2013, no pet.) (same).

"[p]urpose of the 24 Hour Rule and how it relates to the services rendered by the State," "[i]dentification of services provided by the State," and "relation of the 24 Hour Rule" to customs brokers. H.K. Global also requested additional conclusions of law as to: (i) the trial court's "[r]easons" that the "24 Hour Rule does not discriminate against interstate commerce," "is reasonably related to services provided by the State," and "does not disrupt harmony among the States"; (ii) the "[s]tandard of law applied and analysis relied on"; and (iii) a "[r]etailer's duties related to acceptance of [export certificates]."

In its request, H.K. Global failed to *specify* the "additional or amended findings or conclusions" that it sought. *See* Tex. R. Civ. P. 298; *Wagner v. Riske*, 178 S.W.2d 117, 119–20 (Tex. 1944) (party must "specify the further additional or amended findings that the party making the request desires the trial court to make and file"); *Alvarez v. Espinoza*, 844 S.W.2d 238, 241–42 (Tex. App.—San Antonio 1992, writ dism'd w.o.j.) (en banc) (op. on reh'g) ("A bare request is not sufficient; proposed findings must be submitted."). Further, H.K. Global has failed to show that additional findings and conclusions were appropriate or that the trial court's failure to make additional findings and conclusions prevented it from adequately presenting its argument on appeal. *See Flanary*, 150 S.W.3d at 792. Thus, we overrule H.K. Global's eighth issue.

## CONCLUSION

Having overruled H.K. Global's issues, we affirm the trial court's judgment.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed

Filed:   March 28, 2014