**Affirmed and Majority and Concurring Opinions filed July 26, 2016.**



In The

# Fourteenth Court of Appeals

## NO. 14-15-00403-CV

### FREDERICK L. NICHOLAS, Appellant

### V.

### ENVIRONMENTAL SYSTEMS (INTERNATIONAL) LIMITED, BRIAN G. COOK, REIF WINERY INC. (C.O.B. AS REIF ESTATE WINERY), KLAUS REIF AND RE/DEFINING WATER INC., Appellees

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 11-CV-1938**

## M A J O R I T Y  O P I N I O N

This case involves a pro se judgment debtor's appeal of the trial court's recognition of a Canadian money judgment obtained by the judgment creditors. On appeal, the debtor contends that trial court erred by denying his motion to show authority filed against the creditors' attorney, filing incomplete and inadequate findings of fact, and recognizing the judgment. We affirm.

## FACTUAL BACKGROUND

In December 2011, attorney James T. Fletcher filed an affidavit requesting recognition and enforcement of an attached Canadian money judgment under the Uniform Foreign Country Money-Judgment Recognition Act (the "Act") in the 56th District Court of Galveston County. *See* Tex. Civ. Prac. & Rem. Code §§ 36.001–.008. The judgment, dated December 1, 2010, awards attorney's fees and costs to Environmental Systems (International) Limited, Brian G. Cook, Re/Defining Water Inc., Klaus Reif, and Reif Winery Inc. (C.O.B. as "Reif Estate Winery") in a lawsuit brought by Frederick L. Nicholas in the Federal Court of Toronto, Ontario.[1]

In August 2014, Fletcher filed a notice of partial non-suit on behalf of ESIL, Cook, and RDWI.[2] Shortly after that, Nicholas filed a motion to show authority under Rule 12 of the Texas Rules of Civil Procedure, challenging Fletcher's authority to act on behalf of ESIL, Cook, and RDWI. Nicholas did not challenge Fletcher's authority to act on behalf of Klaus Reif or Reif Winery.

Fletcher filed a response, arguing that it was not necessary to prove his authority to act on behalf of ESIL, Cook, and RDWI because they had nonsuited their action and were no longer parties. Fletcher also attached an affidavit of Klaus Reif, on behalf of himself and as President and Chief Executive Officer of Reif Winery, in which he averred that Fletcher was authorized to act as an attorney for him and Reif Winery in the matter. After a hearing, the trial court denied Nicholas's motion to show authority.

---

[1] In an affidavit filed in support of his motion for nonrecognition of the Canadian judgment, Nicholas averred that he filed a copyright infringement action against the named defendants in 2005 and the case was tried in 2010.

[2] We adopt Nicholas's abbreviations for Environmental Systems (International) Limited ("ESIL") and Re/Defining Water Inc. ("RDWI").

In September 2014, Nicholas moved for nonrecognition of the judgment. In the motion, Nicholas argued, among other things, that the Canadian judgment was not properly authenticated and was procured through fraud. A bench trial was held on January 23, 2015. Nicholas asserted additional grounds for nonrecognition at trial.

On February 4, 2015, the trial court signed a judgment in favor of Klaus Reif and Reif Winery recognizing the Canadian judgment. The trial court's judgment authorized Klaus Reif and Reif Winery to enforce the Canadian judgment in Texas insofar as it granted a judgment to Klaus Reif and Reif Winery against Nicholas "in the amount of $143,091.59 together with disbursements of $7,028 for a total of $150,119.59 (Canadian)" to each, plus their court costs.[3]

Nicholas timely requested findings and fact and conclusions of law, and gave notice that the requested findings and conclusions were past due. On May 25, 2015, the trial court filed findings of fact and conclusions of law. Among other things, the trial court found that ESIL, Cook, and RDWI had nonsuited their actions; Klaus Reif and Reif Winery remained as plaintiffs in the lawsuit for purposes of registration, recognition, and enforcement of a foreign judgment; Klaus Reif and Reif Winery did not obtain their judgment against Nicholas by fraud; the judgment in their favor was valid and final; the judgment satisfied all

---

[3] In the Canadian judgment, the court explained that in its discretion it chose to make an "elevated costs award" against Nicholas, finding, among other things, that "[a]lthough the Court found a technical breach of copyright . . . against Mr. Brian Cook and [RDWI], the Plaintiff's claim was opportunistic and highly exaggerated, and was conducted in a way that lengthened, complicated and delayed the proceedings unduly, and that unjustifiably ensured that the costs incurred by the Defendants would be entirely out of proportion to any amount that the Plaintiff could possibly have received by way of damages or an accounting for profits." The court also found that "[t]here was never any real basis for a claim against Reif Winery Inc. and Mr. Klaus Reif" and that "[t]hese parties were joined and maintained as Defendants in what appears to the Court to have been a cynical attempt by the Plaintiff to put further pressure on the other Defendants to accede to his exorbitant claim."

filing and notice requirements of the Act and was entitled to recognition, registration, and enforcement in Texas; and Nicholas failed to present any credible evidence of his asserted defenses under the Act. The trial court also rendered conclusions of law in support of the relief it awarded to the Reif parties.

Nicholas requested amended findings of fact and conclusions of law, which the trial court refused. This appeal followed.

## ANALYSIS OF NICHOLAS'S ISSUES

On appeal, Nicholas raises six issues, some with multiple sub-issues: (1) the trial court erred by denying Nicholas's motion to show authority against attorney Fletcher; (2) the trial court's findings of fact and conclusions of law were incomplete and inadequate such that they caused him harm; (3) the trial court erred in recognizing the Canadian judgment because Fletcher's affidavit does not comply with the Act's statutory requirement that the affidavit list the "last known post office" addresses of the judgment creditors; (4) the judgment lacks finality, conclusiveness, and enforceability, because it is not signed by the Canadian judge who presided over the proceeding; (5) the judgment was not properly authenticated; and (6) the judgment was procured by fraud. We will first address Nicholas's second issue concerning the trial court's findings of fact and conclusions of law. We will then address the motion to show authority and Nicholas's challenges to the trial court's judgment.

## I. The Trial Court's Findings of Fact and Conclusions of Law

In his second issue, Nicholas argues that the trial court's findings and conclusions were inadequate and incomplete because "there are no explicit findings of fact and the findings appear to be attempts at conclusions of law, without reference to any underlying ultimate facts" and "there are no substantive

4

conclusions of law." As a result, Nicholas maintains, he has been harmed because he must guess at the trial court's reasons for granting the judgment, which requires him to file a lengthier and more complicated appellate brief in an attempt to cover all potential bases for the judgment. Nicholas requests that this Court abate the appeal, order the trial court to make "appropriate" findings and conclusions, and grant Nicholas leave to amend his appellate brief in response to the amended findings and conclusions.

When properly requested, the trial court has a mandatory duty to file findings of fact and conclusions of law. *Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 770 (Tex. 1989). The primary purpose for findings of fact is to assist the losing party in narrowing his issues on appeal by ascertaining the true basis for the trial court's decision. *See Rush v. Barrios*, 56 S.W.3d 88, 96 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (noting that "it is advantageous to the appellant to narrow the issues on appeal by requesting findings of fact and conclusions of law"); *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 255 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (same).

A party may request additional or amended findings of fact and conclusions of law if the party believes that the court's findings and conclusions are deficient in some way. *See* Tex. R. Civ. P. 298. If a party requests additional findings and conclusions, the request "should sharpen, not obfuscate, the issues for appeal." *Vickery*, 5 S.W.3d at 255. The trial court "has no duty [to] make additional or amended findings that are unnecessary or contrary to its judgment; a trial court is only required to make additional findings and conclusions that are appropriate." *Vickery*, 5 S.W.3d at 254.

A trial court's refusal to make findings of fact does not require reversal if the record before the appellate court affirmatively shows that the complaining party

5

suffered no harm. See *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996) (per curiam); *Magallanes*, 763 S.W.2d at 772. Error is harmful if it prevents an appellant from properly presenting a case to the appellate court. Tex. R. App. P. 44.1(a)(2); *Tenery*, 932 S.W.2d at 30. Generally, the controlling issue is whether the circumstances of the case would require the appellant to guess at the reasons for the trial court's decision. *Elliott v. Kraft Foods N. Am., Inc.*, 118 S.W.3d 50, 54–55 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

A review of Nicholas's request for amended findings of fact and conclusions of law reveals that it is 27 pages long, lists 35 "material issues which were disputed during the trial" (not counting sub-issues), and requests 44 additional findings of fact and 35 additional conclusions of law. Many of the so-called disputed issues and requested findings and conclusions are repetitive, include unnecessary evidentiary matters irrelevant to the ultimate issues, or are otherwise not needed to uphold the judgment. The trial court is not required to set out in detail every reason or theory by which it arrived at its final conclusions. *H.K. Global Trading, Ltd. v. Combs*, 429 S.W.3d 132, 141 (Tex. App.—Austin 2014, pet. denied). Nor is the trial court required to accept amended findings and conclusions that merely resolve evidentiary issues or are otherwise unnecessary. *Limbaugh v. Limbaugh*, 71 S.W.3d 1, 6 (Tex. App.—Waco 2002, no pet.) (explaining that the trial court must make findings and conclusions on ultimate or controlling issues, but need not do so on evidentiary issues); *Vickery*, 5 S.W.3d at 254 (stating that the trial court is not required to accept unnecessary findings).

To the extent Nicholas contends that the trial court was required to accept all of his amended findings and conclusions, we reject that contention because it would run counter to the intended purpose of the rules by greatly increasing, rather than narrowing, the issues on appeal. *See Rush*, 56 S.W.3d at 96; *Vickery*, 5

S.W.3d at 255. Further, although Nicholas asserts that the trial court's failure to make additional findings and conclusions prevented him from adequately presenting his argument on appeal, the record shows that he was able to properly present his appellate arguments for this Court's analysis. We therefore overrule Nicholas's second issue.

## II.     The Motion to Show Authority

In his first issue, Nicholas contends that the trial court improperly denied his motion to require attorney Fletcher to show authority to act on behalf of ESIL, Cook, and RWDI. According to Nicholas, in the absence of an affidavit or testimony by a representative of these parties, the trial court's denial of his motion should be reversed and remanded for the trial court to require Fletcher to provide sufficient evidence of his authority to act on their behalf.

We review a trial court's ruling on a Rule 12 motion to show authority for an abuse of discretion. *Bosch v. Harris Cty.*, No. 14-13-01125-CV, 2015 WL 971317, at *3 (Tex. App.—Houston [14th Dist.] Feb. 26, 2015, no pet.) (mem. op.). Rule 12, titled "Attorney to Show Authority," provides, in pertinent part:

> A party in a suit or proceeding pending in a court of this state may, by sworn written motion stating that he believes the suit or proceeding is being prosecuted or defended without authority, cause the attorney to be cited to appear before the court and show his authority to act. . . . At the hearing on the motion, the burden of proof shall be upon the challenged attorney to show sufficient authority to prosecute or defend the suit on behalf of the other party. Upon his failure to show such authority, the court shall refuse to permit the attorney to appear in the cause, and shall strike the pleadings if no person who is authorized to prosecute or defend appears.

Tex. R. Civ. P. 12. The purpose of a Rule 12 motion is to protect parties from groundless suits and to permit dismissal of suits instituted without authority. *See Angelina Cty. v. McFarland*, 374 S.W.2d 417, 422–23 (Tex. 1964); *Urbish v.*

7

*James*, 688 S.W.2d 230, 233 (Tex. App.—Houston [14th Dist.] 1985, no writ).

At the hearing on Nicholas's motion, Nicholas stated that he believed that Fletcher lacked authority to act on behalf of ESIL, Cook, and RDWI. Nicholas further argued that the burden was on Fletcher to demonstrate his authority. The trial court asked Nicholas why he believed Fletcher lacked authority, and Nicholas responded that he was not required to produce evidence as to his belief. After reviewing the notice of nonsuit filed on behalf of ESIL, Cook, and RDWI, the trial court stated that it appeared to be a "valid nonsuit." The trial court also questioned Fletcher concerning his authority to act, and asked him if he had been retained. Fletcher responded that he had been retained by a Canadian attorney for the parties to domesticate the judgment, and he confirmed that he had received payment for his services. The trial court then denied Nicholas's motion.

Assuming without deciding that the trial court erred in denying Nicholas's motion to show authority, Nicholas has not demonstrated that he was harmed. *See* Tex. R. App. P. 44.1 (no judgment may be reversed on appeal unless the error probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case to the court of appeals). The claims asserted by ESIL, Cook, and RDWI were nonsuited before the motion was heard, mooting the issue and effectively providing Nicholas the relief to which he would have been entitled had he been successful. *See McFarland*, 374 S.W.2d at 422–23; *Urbish*, 688 S.W.2d at 233. We therefore overrule Nicholas's first issue.

### III. The Affidavit Supporting the Request for Recognition of the Foreign Judgment

Nicholas next contends that Fletcher's affidavit did not comply with the Act's requirement that the affidavit include the "last known post office address" of the judgment creditors, because Fletcher instead used the address of law offices of

the creditors' Canadian attorney.

The Act governs the recognition of foreign country money judgments. *Diamond Offshore (Bermuda), Ltd. v. Haaksman*, 355 S.W.3d 842, 845 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). When recognition is not contested or a contest is overruled, a foreign-country judgment is conclusive between the parties to the extent that it grants recovery or denial of a sum of money. *Id.* The party seeking to avoid recognition has the burden of proving a ground for nonrecognition. *Id.* We review a trial court's ruling on recognition of a foreign-country judgment de novo. *Id.*

The procedure for recognizing a foreign judgment includes filing an authenticated copy of a foreign judgment with a court clerk and providing notice to the judgment debtor. *See* Tex. Civ. Prac. & Rem. Code §§ 36.0041, 36.0042; *Beluga Chartering B.V. v. Timber S.A.*, 294 S.W.3d 300, 303 (Tex. App.—Houston [14th Dist.] 2009, no pet.). To facilitate the provision of notice to the judgment debtor, the Act requires the following:

> (a) At the time a foreign country judgment is filed, the party seeking recognition of the judgment or the party's attorney shall file with the clerk of the court an affidavit showing the name and last known post office address of the judgment debtor and the judgment creditor.
>
> (b) The clerk shall promptly mail notice of the filing of the foreign country judgment to the party against whom recognition is sought at the address given and shall note the mailing in the docket.
>
> (c) The notice must include the name and post office address of the party seeking recognition and that party's attorney, if any, in this state.

Tex. Civ. Prac. & Rem. Code § 36.0042.

Nicholas challenges the Reif parties' compliance with section 36.0042(a)'s requirement that the affidavit accompanying the foreign-country judgment shall provide the "name and last known post office address of the . . . judgment

9

creditor." Tex. Civ. Prac. & Rem. Code § 36.0042(a). In this case, the address for each judgment creditor was given as "C/O Nicholas F. Ferguson, 80 King St., Suite 900, PO Box 760, St. Catharines, Ontario, L2R 6Y8." Nicholas contends that the address of the Canadian attorney's law offices is not in strict compliance with the filing requirements necessary to invoke the statute. *See* Tex. R. Civ. P. §§ 36.004; 36.0042; *see also Wu v. Walnut Equip. Leasing Co.*, 909 S.W.2d 273, 278 n.1 (Tex. App.—Houston [14th Dist.] 1995) (stating that the statutory requirement of an affidavit showing the name and last known post office address of the judgment debtor and judgment creditor is "an essential element" of the Uniform Enforcement of Foreign Judgments Act without which a judgment of a sister state ceases to have the same effect as a judgment of the court in which it was filed), *rev'd on other grounds*, 920 S.W.2d 285 (Tex. 1996) (per curiam).

In response, the Reif parties assert that the reason the statute requires an address is so that the judgment debtor might be able to contact the judgment creditor, and when involved in legal matters, many individuals use their attorney's address for purposes of notice and contact. The Reif parties also argue that the statute does not require a more specific type of address for the judgment creditor, such as the business, residence, or actual physical address. Nicholas replies that to accept the Reif parties' position would be to permit a judgment debtor to use "any address it chooses" as its last known post office address.

Neither party cites any authorities addressing the specific issue raised, and we have located no case directly on point. However, we find instructive a case involving the similar filing and notice requirements of section 35.004 of the Uniform Enforcement of Foreign Judgments Act ("UEFJA"). *See Tri-Steel Structures, Inc. v. Hackman*, 883 S.W.2d 391 (Tex. App.—Fort Worth 1994, writ

10

denied).[4] In that case, the Hackmans had filed in the trial court a foreign judgment they obtained against Tri-Steel along with an affidavit containing Tri-Steel's last known post office address, and both the Hackmans and the court clerk sent notices to Tri-Steel at that address. *Id.* at 394. However, the address provided was incorrect and Tri-Steel denied that it received the notices. *Id.* at 394–95. On appeal, Tri-Steel complained that the filing and notice provisions of section 35.004 were not sufficient to meet the minimum standards of due process and, further, that the notice it received was inadequate. *See id.* at 393–94. Relevant here, the court concluded that Tri-Steel was not prejudiced by the "technical violation" of the statute because Tri-Steel had learned of the filing in time to assert defenses to the judgment; consequently, the court held that the trial court did not err in domesticating the foreign judgment. *Id.* at 395. The court also declined to reach Tri-Steel's due process challenge to the statute, noting that "because Tri-Steel still had a manner of recourse even after the defective notice, it has failed to show it suffered any harm as a result of the notice provisions of the [UEFJA]." *Id.* at 396. *Cf. Tanner v. McCarthy*, 274 S.W.3d 311, 316–17 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (holding that judgment creditor's failure to file affidavit concurrently with foreign judgment as statute required did not deprive trial court of jurisdiction, but could present procedural bar to enforcement because court clerk would not have the information necessary to provide the judgment debtor with notice of the filing).

In this case, Nicholas argues that the address of the Reif parties' Canadian attorney, Ferguson, is insufficient to satisfy section 36.0042(a)'s requirement that

---

[4] Like section 36.0042(a) of the Act, section 35.004(a) of the UEFJA provides: "At the time a foreign judgment is filed, the judgment creditor or the judgment creditor's attorney shall file with the clerk of the court an affidavit showing the name and last known post office address of the judgment debtor and the judgment creditor." *See* Tex. Civ. Prac. & Rem. Code § 35.004(a).

the judgment creditor's "last known post office address" be provided in the affidavit filed concurrently with the foreign-country judgment. However, Nicholas does not contend that Ferguson does not represent the Reif parties in this matter or that he was prejudiced in any way as a result of the address provided. Therefore, assuming for purposes of this appeal that the Reif parties' addresses did not satisfy the technical statutory requirement of section 36.0042(a), we nevertheless hold that because Nicholas has not shown that he was harmed by the alleged technical violation of the statute, the trial court did not err in recognizing the judgment. We therefore overrule Nicholas's third issue.

## IV.    The Finality, Conclusiveness, and Enforceability of the Judgment

In his fourth issue, Nicholas argues that the Act does not apply because the Canadian judgment is not "final and conclusive where rendered." *See* Tex. Civ. Prac. & Rem. Code § 36.002(a); *Reading & Bates Constr. Co. v. Baker Energy Res. Corp.*, 976 S.W.2d 702, 706 (Tex. App.—Houston [1st Dist.] 1998, pet. denied).[5] According to Nicholas, the Canadian judgment is not enforceable for three reasons: (1) it is not facially final; (2) it never became effective pursuant to Canadian federal court rules; and (3) it is not a final judgment under Texas law. The crux of Nicholas's arguments is that the judgment is not final because it does not contain the trial judge's original signature. Nicholas argues that under both Canadian and Texas law the lack of a signature shows that the Reif parties never

---

[5] In relevant part, the Act provides:

(a) This chapter applies to a foreign country judgment:

(1) that is final and conclusive and enforceable where rendered, even though an appeal is pending or the judgment is subject to appeal; or

(2) that is in favor of the defendant on the merits of the cause of action and is final and conclusive where rendered, even though an appeal is pending or the judgment is subject to appeal.

Tex. Civ. Prac. & Rem. Code § 36.002(a).

satisfied their initial burden to show that the judgment was final and enforceable.

In a finality challenge, the judgment debtor bears the burden of producing evidence demonstrating that the judgment is not final if the judgment is facially final. *Hernandez v. Seventh Day Adventist Corp.*, 54 S.W.3d 335, 337 (Tex. App.—San Antonio 2001, no pet. (citing *Dear v. Russo*, 973 S.W.2d 445, 446 (Tex. App.—Dallas 1998, no pet.)). If the judgment is not facially final, however, the judgment creditor bears the burden of producing evidence demonstrating the judgment is final. *Id.* In determining finality for purposes of the Act, we consider whether the judgment is final according to the laws of the foreign country. *Id.*

The Reif parties' sole response to this issue is that it was not preserved for review. The Reif parties are correct that Nicholas did not complain in his motion for nonrecognition that the judgment lacked finality because it was not signed. However, Nicholas raised the issues of finality, conclusiveness, and enforceability in his opening statement at trial. He also cross-examined Nicholas Ferguson, the Canadian lawyer who obtained the certified copy of the judgment from the Canadian federal court, concerning the lack of an original signature. Ferguson explained that the judgment was a certified copy and not the original judgment, and he acknowledged that it did not bear the presiding judge's signature. Ferguson also acknowledged that he had never seen the original judgment bearing the judge's signature. Nicholas also questioned Ferguson concerning a Canadian court rule providing that an order is generally effective when signed.[6] The trial court ultimately found that the judgment was "valid and final," thereby rejecting

---

[6] Nicholas asked Ferguson to read from "Federal Court Rule 392(2)," which provides: "Unless it provides otherwise, an order is effective from the time that it is endorsed in writing and signed by the presiding judge or prothonotary or, in the case of an order given orally from the bench in circumstances that render it impracticable to endorse a written copy of the order, at the time it is made."

13

Nicholas's finality challenge. On this record, we conclude that Nicholas preserved his complaint for appellate review.

The first page of the judgment identifies the docket number of the case, the date of the judgment, and "The Honourable Mr. Justice Russell" as the presiding justice of the court. It also bears a federal court seal. The five-page judgment reflects that, after adjudicating liability on July 12, 2010, the court ordered the parties to make written submissions on the issue of costs, which the defendants submitted and the court received and reviewed. After a detailed discussion of the "factors at play in this dispute," the court considered the applicable federal court rules and exercised its discretion in rendering a judgment awarding costs to Klaus Reif, Reif Winery, ESIL, Cook, and RDWI.[7]

On the last page of the judgment, Justice Russell's name appears typed and in quotation marks above the signature line, as reproduced here:



---

[7] Nicholas's affidavit filed in support of his motion for nonrecognition confirmed that the judgment for costs was rendered after liability had been determined. Nicholas did not aver that the judgment at issue lacked finality for any reason. United States courts routinely grant recognition to such later-determined costs assessments as final judgments under the UFMJRA. *See New Hampshire Ins. Co. v. Magellan Reinsurance Co. Ltd.*, No. 02-11-00334-CV, 2013 WL 105654, at *6 (Tex. App.—Fort Worth Jan. 10, 2013, pet. denied) (mem. op.).

Thus, although the certified copy of the judgment does not contain an original or graphically reproduced signature, it contains a signification that a signed original exists. Similar forms of signification are commonly used in court filings and other documents.[8] Further, Ferguson testified that the certified copy was obtained from the Registrar of the Court in Toronto and he had obtained it in the same way he has obtained certified copies from the federal court for more than twenty-five years. Ferguson also testified that the judgment was an effective and final judgment of Justice Russell.

On this record, we hold that the trial court did not err by concluding that Reif and Reif Winery demonstrated that the Canadian judgment was facially final. *See Hernandez*, 54 S.W.3d at 337. We overrule Nicholas's fourth issue.

### V.  Authentication of the Judgment

In his fifth issue, Nicholas contends that the Canadian judgment was not properly authenticated. "To be recognized under the Act, a foreign country judgment must be authenticated in accordance with (1) an act of Congress; (2) a Texas statute; or (3) a treaty (or other international convention) to which the United States is a party." *New Hampshire Ins*., 2013 WL 105654, at *7 (citing Tex. Civ. Prac. & Rem. Code § 36.0041); *see Hernandez*, 54 S.W.3d at 338 (stating that authentication, like finality, is required to invoke the Act). It is undisputed that the Canadian judgment is not authenticated by an act of Congress or a treaty; therefore, the judgment must be authenticated in accordance with Texas law. On appeal, Nicholas argues that the judgment is not properly authenticated under Rule 901 of the Texas Rules of Evidence and does not satisfy the requirements for self-authentication under Rules 902(3) and 902(4).

---

[8] Indeed, Nicholas's affidavit filed in support of his motion for nonrecognition attaches other orders showing the same type of significations.

Under Rule 901, the requirement of authenticity is "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *In Re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005) (citing Tex. R. Evid. 901(a)) (internal quotations omitted). Evidence may be authenticated in various ways, including by direct testimony from a witness with knowledge that a matter is what it is claimed to be. *See* Tex. R. Evid. 901(b)(1); *New Hampshire Ins. Co.*, 2013 WL 105654, at \*7. Authenticity may also be proved by circumstantial evidence. *Singeaure v. Bally Total Fitness Corp.*, No. 01-05-01070-CV, 2008 WL 5263235, at \*6 (Tex. App.—Houston [1st Dist.] Dec. 18, 2008, no pet.) (mem. op.). Evidentiary rulings are committed to the sound discretion of the trial court. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007). The trial court, as the fact finder, is the sole judge of a witness's credibility and the weight of his testimony, and may also resolve inconsistencies in the witness's testimony. *See Vickery*, 5 S.W.3d at 255 n.5.

Nicholas contends that the judgment was not properly authenticated by Ferguson's testimony because Ferguson lacked firsthand knowledge that the judgment was an authentic copy of an original judgment. *See Starzl v. Starzl*, 686 S.W.2d 203, 206 n.2 (Tex. App.—Dallas 1984, no writ) (noting that "authentication of a judgment of a sister state may also be accomplished by a witness who has compared the copy offered in the evidence with the original record entry thereof"), *superseded by statute on other grounds*, *Farley v. Farley*, 731 S.W.2d 733 (Tex. App.—Dallas 1987, no writ). Nicholas argues that Ferguson's testimony demonstrates that he obtained the judgment from "a nameless agent"; he did not claim to have received the judgment directly from the court registry officer or see the registry officer certify it; he had no fact-based evidence as to where the registry officer obtained the judgment; and he did not

testify that he discussed it with the registry officer. Nicholas also points out that Ferguson acknowledged on cross-examination that he has never seen the original order signed by the presiding Canadian judge. According to Nicholas, this testimony contradicts Fergusons's earlier direct testimony that he "had an opportunity to look at the original and it conforms with the original in all respects," and also impeaches his affidavit of June 16, 2011, in which he stated that he had compared the copy to the original document.

As the above representation reflects, the last page of the Canadian judgment contains a certification that "the above document is a true copy of the original filed of record in the Registry of the Federal Court of Canada" on December 1, 2010. The certification is dated June 13, 2011, and is signed by Jeff Weir, Registry Officer. The judgment also contains a stamp of the Department of Foreign Affairs and International Trade authenticating Weir's signature. Ferguson testified that he obtained the certified copy of the judgment from the court registry in the same way he has obtained certified copies from the federal court for twenty-five years. Ferguson further testified that to obtain the certified copy of the judgment, he employed an agent to go to the court to with a letter requesting the certified copy from the registrar, and he paid a fee to obtain the document. Ferguson explained that after he received the certified copy from the federal court in Toronto, he sent it to the Department of Foreign Affairs for authentication of the registrar's signature. Ferguson acknowledged that he has never seen the original signed order, but he testified that he knew it was a copy of the original based on his prior experience. During the trial, the trial court observed that the judgment was certified as a true and correct copy of the judgment, and it had stamps from the registrar and the Department of Foreign Affairs and International Trade in Canada. Consequently, the trial court determined that the judgment "has all the appearance of being an

accurate, certified copy of a judgment from this particular Judge and Court."

Based on Ferguson's testimony explaining the process he undertook to obtain the certified copy of Justice Russell's judgment from the court registrar and to authenticate the registrar's signature, the registrar's certification that the document was a true copy of the original filed on December 1, 2010, and the additional certification of the Department of Foreign Affairs and International Trade, we cannot say that the trial court abused its discretion in determining that the evidence was sufficient to demonstrate that the judgment is what it purports to be. *See* Tex. R. Evid. 901(a); *Sinegaure*, 2008 WL 4263235, at *7 (affirming trial court's ruling that contract was authenticated by sponsoring witness who vouched for its authenticity and no party testified that signature on contract was not appellant's). The trial court was also entitled to consider Ferguson's credibility, resolve any inconsistencies in his testimony, and determine the weight of the evidence. Because the trial court could have determined that the judgment was authenticated under Rule 901, we need not address whether the judgment met the requirements for self-authentication under Rules 902(3) and 902(4). *See New Hampshire Ins. Co.*, 2013 WL 105654, at *7 (stating that party seeking recognition and enforcement of foreign-country money judgment was not required to authenticate the judgment under Rule 902, but could choose to authenticate the judgment in accordance with Rule 901). We overrule Nicholas's fifth issue.

## VI.   Judgment Procured Through Fraud

In his sixth issue, Nicholas contends that the trial court erred by concluding that the Canadian Judgment was not obtained by fraud. According to Nicholas, ESIL, Cook, RDWI, Klaus Reif, and Reif Winery misrepresented to the Canadian court that they each individually suffered recoverable and reimbursable costs in their submissions for costs, and they were awarded costs based on those

18

misrepresentations. Nicholas claims that in fact, Klaus Reif was the only party who actually suffered recoverable and reimbursable costs, a fact Nicholas did not learn until the present Texas litigation.

The Act provides several statutory grounds on which a foreign-country judgment need not be recognized, including if "the judgment was obtained by fraud." Tex. Civ. Prac. & Rem. Code § 36.005(b)(2). The party seeking to avoid recognition has the burden of proving a ground for nonrecognition. *Courage Co., L.L.C. v. Chemshare Corp.*, 93 S.W3d 323, 331 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Unless the judgment debtor satisfies his burden of proof by establishing the specific grounds for nonrecognition, the court is required to recognize the foreign-country judgment. *Id.* A judgment debtor is precluded from collaterally attacking a foreign judgment when an issue was litigated before a foreign court or the party was given the opportunity to litigate the issue before that court. *Id.* Grounds for nonrecognition may be waived if a party had the right to assert that ground as an objection or defense in the foreign country court but failed to do so. *Id*.

Nicholas contends that he discovered the fraud from documents that were not included in the defendant's cost submissions to the Canadian court and were unknown to him before the present litigation, including a retainer agreement between the defendants and their attorneys, Torys LLP; legal bills addressed to Cook reflecting the total legal costs to the defendants; and a "ledger" of Reif Winery. He also contends that Klaus Reif testified at trial that Reif Winery was the only defendant in the Canadian action that suffered a recoverable and reimbursable actual economic loss. Therefore, Nicholas maintains, the fraud prevented him from making a full and fair defense in the Canadian action, because he did not know that only one of the five defendants actually incurred litigation costs. In support of his

19

contention that the record reflects extrinsic fraud, Nicholas cites *Harrison v. Triplex Gold Mines, Ltd*, 33 F.2d 667, 671 (1st Cir. 1929).

We conclude, however, that the trial court could have rejected Nicholas's fraud allegation based on Nicholas's arguments at trial, the evidence presented, and Klaus Reif's testimony. At trial, Nicholas argued that the submissions for costs in the Canadian court reflected that all of the defendants incurred legal costs, but in the present litigation, the Reif parties were only able to produce legal bills addressed to Cook from Torys LLP; therefore, the evidence showed that only Cook actually incurred any legal fees, contrary to what was represented to the Canadian court. On cross-examination, however, Klaus Reif did not testify that only one party actually incurred litigation costs in the Canadian action. To the contrary, he testified that although Reif Winery paid the legal bills from Torys LLP that were sent to Cook, the defendants as a group incurred the legal fees. Nothing in the evidence admitted at trial was inconsistent with Klaus Reif's testimony. And although Nicholas argued that he was precluded from obtaining relevant discovery in the Canadian court, he presented no evidence to support that allegation. Therefore, the trial court would not have erred in rejecting Nicholas's claim that the Canadian judgment was not entitled to recognition based on fraud.

Even accepting Nicholas's characterization of the alleged fraud, his own argument does not support reversal of the trial court's judgment. The Canadian judgment reflects that, after liability was determined, the trial court ordered both parties to provide cost submissions for its review and consideration. Only the defendants presented submissions in response. The issue of costs was clearly before the trial court and Nicholas had an opportunity to contest the defendants' submissions, but apparently chose not to do so. Further, the record contains no evidence that Nicholas was prevented from obtaining discovery of the complained-

20

of documents relating to the defendants' legal bills in connection with the costs determination. On this record, we hold that Nicholas has failed to carry his burden to demonstrate that he was denied an opportunity to fully and fairly litigate the issue of the costs awarded to the defendants. *See Courage Co.*, 93 S.W3d at 331; *see also Norkan Lodge Co. Ltd. v. Gillum*, 587 F. Supp. 1457, 1460–61 (N.D. Tex. 1984) (citing *Harrison* in holding that appellant presented no evidence that Canadian judgment was obtained by fraud in part based on appellant's own failure to appear for trial and contest appellees' version of the facts). We overrule Nicholas's sixth issue.

### CONCLUSION

Having overruled Nicholas's issues, we affirm the trial court's judgment.

/s/     Ken Wise
        Justice

Panel consists of Chief Justice Frost and Justices Boyce and Wise (Frost, C.J., concurring).

21