Opinion issued December 23, 2025



In The

# Court of Appeals

For The

# First District of Texas

―――――――――――――

## NO. 01-24-00146-CV

―――――――――――――

**PHYLLIS ANN WALDROP, Appellant**

**V.**

**TAMMY WALDROP MILLER, Appellee**

―――――――――――――

**On Appeal from the Probate Court of Galveston County**
**Galveston County, Texas**
**Trial Court Case PR-0070732**

―――――――――――――

## MEMORANDUM OPINION

This appeal arises from a probate proceeding brought by the decedent's daughter, Tammy Waldrop Miller, alleging the decedent's wife, Phyllis Waldrop, forged the decedent's 2006 will.

After a bench trial, the trial court found the decedent's signature was forged and ruled that the will was void.

In two issues, Waldrop contends Miller's will contest is barred by the statute of limitations and the trial court erroneously admitted evidence resulting in an improper judgment.

We affirm.

## Background

The decedent, Zelmer Leon Waldrop ("Leon"), had seven children and was married to Waldrop at the time of his death. Waldrop is the mother of one of Leon's children. Two years after Leon's death, one of his sons, Zelmer Leon Waldrop, Jr. applied for letters of administration, stating that Leon died intestate. One year later, Waldrop objected to the application and attached a document as Leon's Last Will and Testament, allegedly signed by him and witnessed by Corliss Smith (also known as Corliss Shriver) and Edith Townsend. The will left Waldrop all of Leon's possessions except $100 for each of his children. Zelmer Leon Waldrop, Jr. initially contested the will, alleging it was forged, but he later withdrew his contest.

Although the trial court appointed Waldrop as independent administratrix of Leon's estate, the record does not contain an order admitting the will to probate. The trial court's order required Leon's children to sign a release and receipt for the $100 dollar bequest to each of them, but none did. Miller testified that she knew that at some point her brother had filed something in the probate court regarding Leon's

2

estate, but she was not a party to that case, was unaware of that case's disposition, and never received an inventory.

In 2020, Miller contested the will, alleging that the will was forged. Miller also alleged that one of the subscribing witnesses to the will owed Leon and Waldrop a substantial amount of money. She asserted her claim was not barred by the statute of limitations because she did not discover the alleged forgery until 2020.

At trial, Miller testified that in 2019 she began receiving anonymous phone calls telling her that the will was forged and that the caller had proof. Subsequently, the caller revealed herself as Eunice Lundy, Waldrop's cousin. In 2020, Eunice Lundy and Sonja Roberson, Waldrop's sister, provided Miller with over thirty documents showing attempts to practice Leon's signature with the same or similar text as the will. The documents also contained copies of a real estate purchase agreement between Leon and Corliss Shriver, a subscribing witness to the will.

Sonja Roberson testified about how Miller came to be in possession of the documents. She testified that she had received the documents directly from Waldrop—Waldrop handed her the box of documents and instructed her to burn them. When she opened the box, she was shocked to find multiple versions of Leon's signature on a single page and multiple versions of Leon's will, some containing one or more "Leon Waldrop" signatures. It appeared to Roberson that the documents were attempts to practice forging Leon's signature. Roberson testified that she gave

3

the documents to her mother, Audrey Stanton, who advised her to send the documents to Leon's children upon the death of either herself or Waldrop. Then, Roberson stashed the documents in a cedar chest. After confrontations with Waldrop, Roberson gave the documents to Stanton, who then gave the documents to Eunice Lundy. Roberson learned after Stanton's death that Stanton had given the documents to Lundy. Roberson testified that she drove Lundy to meet with Miller and give the original documents to her. Lundy and Stanton passed away before trial.

The trial court admitted the box of documents as Plaintiff's Exhibit 2 over Waldrop's objections based on hearsay and lack of authenticity. Roberson testified that a few documents were added to the box by Lundy, but the rest of the documents were in the box given to her by Waldrop.

Susan Abbey, an expert document examiner, testified that based on her review of Leon's signature on other documents, it was highly probable that the will did not contain Leon's genuine signature.

Waldrop testified that she did not hand Roberson the box of documents to burn and that she had never seen the documents purporting to be practice signatures. She further testified that the only documents Roberson obtained from her were a copy of the purchase agreement, the will, a handwritten letter, and possibly some court pleadings. Waldrop testified that she had accidentally left those documents at Roberson's house. Waldrop affirmed that she was familiar with Leon's signature

4

and recognized the signature on the will as his authentic signature. She also denied that she forged Leon's signature. She introduced into evidence the "Proof of Subscribing Witness," containing written testimony from Corliss Smith that she was present when the will was signed and saw Leon sign the will.

The trial court entered a final judgment ruling that the will Waldrop offered to probate was a forgery and thus void, having no further force or effect.

**Statute of Limitations**

In her first issue, Waldrop contends that the statute of limitations barred Miller's will contest.

### A. Standard of Review

Determining the accrual date of a cause of action is a question of law which we review de novo. *Gandy v. Williamson*, 634 S.W.3d 214, 233 (Tex. App.—Houston [1st Dist.] 2021, pet. denied). The discovery rule applies to claims alleging forgery or other fraud under the Texas Estates Code. TEX. EST. CODE § 256.204. The discovery rule prevents the running of the statute of limitations until the fraud of concealing the wrongdoing is discovered, or by the exercise of reasonable diligence may have been discovered. *Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 57 (Tex. 2015). "Although the date of cause of action is normally a question of law, reasonable diligence is a question of fact." *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 722 (Tex. 2016) (citation omitted); *see Wheeler v. Methodist Hosp.*,

5

95 S.W.3d 628, 637 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (explaining when plaintiff discovers or should have discovered cause of injury and whether plaintiff exercised reasonable diligence in discovering his or her injury are questions of fact).

"The statute of limitations is an affirmative defense." *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988); TEX. R. CIV. P. 94. "The defendant thus bears the initial burden to plead, prove, and secure findings to sustain its plea of limitations." *Woods*, 769 S.W.2d at 517. This burden includes proving when the plaintiff's cause of action accrued. *Robert Horry Sports Med., LLC v. Barnes*, No. 01-19-00256-CV, 2020 WL 7062323, at *6 (Tex. App.—Houston [1st Dist.] Dec. 3, 2020, no pet.); *see also Ogu v. C.I.A. Servs. Inc.*, No. 01-09-01025-CV, 2011 WL 947008, at *5 n.4 (Tex. App.—Houston [1st Dist.] Mar. 17, 2011, no pet.) ("[T]he statute of limitations is an affirmative defense that must be pleaded and tried in the trial court, or it is waived.").

### B. Analysis

Waldrop contends that we should find, as a matter of law, that Miller did not exercise reasonable diligence to discover facts supporting her forgery claim, and thus the statute of limitations bars her claim. She argues, for the first time on appeal, that Miller had constructive notice of the forgery since the will admitted to probate was

a matter of public record.[1] Miller responds that Waldrop did not prove or secure findings for her statute of limitations defense.

Waldrop had the burden to plead, prove, and secure findings on her statute of limitations affirmative defense. *See* TEX. R. CIV. P. 94; *Woods*, 769 S.W.2d at 517. Further, to preserve an issue for appellate review, a party must timely present the issue to the trial court and receive an adverse ruling from the trial court. TEX. R. APP. P. 33.1. Although Waldrop included the statute of limitations defense in her original answer, she did not present or prove that Miller's forgery claim was time-barred or secure a ruling on the issue. *See Khoury v. Tomlinson*, 518 S.W.3d 568, 583 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (holding defendant waived his statute of limitations defense by not attempting to secure a ruling on it until his post-verdict motion); *see also Hudson v. City of Houston*, No. 14-03-00565-CV, 2005 WL 3995160, at *3 n.8 (Tex. App.—Houston [14th Dist.] Jan. 6, 2005, no pet.) (mem. op.) (holding appellants failed to preserve their affirmative defense because although they pleaded it, they failed to otherwise raise it in trial court); *Citizens Nat'l Bank v. Allen Rae Invs., Inc.*, 142 S.W.3d 459, 476 (Tex. App.—Fort Worth 2004, no pet.).

Waldrop relies on this Court's decision in *Fields v. Fields*, No. 01-21-00138-CV, 2022 WL 2836808 (Tex. App.—Houston [1st Dist.] July 21,

---

[1]    The record provided does not contain an order admitting the will to probate. *See* TEX. EST. CODE § 256.201.

2022, pet. denied) (mem. op.). But in *Fields*, the respondent moved for summary judgment, asserting that the two-year limitations period in Texas Estates Code section 256.204 barred the contestant's forgery claim. *Fields*, 2022 WL 2836808, at *2. Here, Waldrop did not assert the statute of limitations defense in her summary judgment motion, at trial, in a post-judgment motion, or when requesting findings of fact or conclusions of law.

Because Waldrop failed to present her affirmative defense and obtain a ruling from the trial court, we hold that Waldrop did not preserve this issue for our review.

## Admission of Evidence

In Waldrop's second issue, she contends that the trial court abused its discretion by admitting into evidence, over objection, Miller's Exhibit 2 because it had not been properly authenticated.

### A. *Standard of Review and Applicable Law*

"We review a trial court's decision to admit evidence over an authentication objection under an abuse of discretion standard." *Washington v. State*, 485 S.W.3d 633, 640 (Tex. App.—Houston [1st Dist.] 2016, no pet.). A trial court abuses its discretion if its ruling was made without regard for any guiding rules or principles. *Cire v. Cummings*, 134 S.W.3d 835, 839 (Tex. 2004). "[W]e must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling." *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). "Moreover, we

8

will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment." *Id.*

Evidence must be authenticated before it may be properly admitted. *Hines v. State*, 608 S.W.3d 354, 365 (Tex. App.—Houston [1st Dist.] 2020, no pet.). To authenticate an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901. "Evidence may be authenticated in various ways, including by direct testimony from a witness with knowledge that a matter is what it is claimed to be." *Nicholas v. Env't Sys. (Int'l) Ltd.*, 499 S.W.3d 888, 900 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Evidence may also be authenticated by "appearance, contents, substance, internal patterns, or other distinctive characteristics, including direct or circumstantial evidence." *Hines*, 608 S.W.3d at 365. The proponent must only produce sufficient evidence that a reasonable fact finder could properly determine the evidence's authenticity, and "[t]he ultimate question of whether a particular item of evidence is what its proponent claims is a question for the fact finder." *Id.*

## B. Analysis

Waldrop's sister, Sonja Roberson, testified that she had received a box of documents from Waldrop, who told her to burn them. Roberson testified that after she discovered what was in the box, the chain of custody was, as follows: she gave the box to her and Waldrop's mother, Audrey Stanton, who then gave the box to

9

Eunice Lundy, and Lundy and Roberson gave the box to Miller. Miller's attorney asked Roberson to look through the box and testify that the documents were a true and accurate reflection of what was in the box when Waldrop handed it to her. Roberson took out a few of the documents and testified that they were not in there at the time Waldrop handed her the box because Eunice Lundy wrote those select letters when the box was in Lundy's possession. Waldrop's attorney took those letters out and set them aside.

Roberson then testified all the rest of the documents were in the box at the time Waldrop handed it to her. Waldrop's attorney objected on the basis of lack of authentication and hearsay, and the trial court overruled the objections and admitted the remaining documents as Miller's Exhibit 2. After some testimony about the writing on the documents, Roberson testified that one document with "multiple, same language" at the top and multiple versions of Leon's signature was in the box of records handed to her by Waldrop. Waldrop's attorney made no objection at that time. Later, Roberson again testified:

> Q: Still, the documents that are in front of you as Exhibit 2, that box, was that the box of documents that you received from your sister after that will had been located?
>
> A: Yes.

Again, Waldrop's attorney made no objection.

10

After direct examination, Roberson confirmed with the trial court which few pages were not originally in the box and asserted that a certain letter was definitely in the box when Waldrop handed it to her. Although this was the conversation Waldrop used to support her argument that Exhibit 2 was not properly authenticated, Waldrop's attorney made no objection. On cross-examination, Roberson again testified that Waldrop handed her the specified box with the specified documents in it. Waldrop's attorney made no objection.

Waldrop contends that Roberson did not authenticate the documents, but that Miller's attorney pulled documents from the box, put them back in, and discussed with the trial court what was in the box. Waldrop highlights the conversation between the trial court, Miller's attorney, and Roberson after direct examination when the trial court was confirming which pages were pulled out of Exhibit 2. Waldrop observes that Roberson was never asked if the revised Exhibit 2 was what she received from Waldrop and was never asked if the documents in Exhibit 2 were the documents she purportedly gave to Miller.

Miller responds that Waldrop's attorney pulled the documents out, not Miller's attorney, and that the documents were not returned to the box. Miller also notes that Roberson confirmed several times that the documents in front of her were the documents from the box Waldrop gave her. Miller points out that Waldrop

11

ignored Roberson's testimony when Exhibit 2 was admitted and that Waldrop failed to show the trial court abused its discretion by admitting Exhibit 2.

Roberson testified several times that Waldrop gave her the box of documents and that she reviewed its contents before giving it to her mother. Based on her prior review of the box, Roberson identified the documents that were originally in the box. Roberson recounted that she gave the documents to her mother, who gave them to Lundy, and then Lundy gave them to Miller in her presence. The trial court did not abuse its discretion by concluding this testimony could support a determination that Exhibit 2 was what Roberson purported it to be.

We overrule Waldrop's second issue.

## Conclusion

We affirm the trial court's judgment.


Clint Morgan
Justice

Panel consists of Justices Rivas-Molloy, Guiney, and Morgan.